# Relf *against* Rapp.

A common carrier is answerable for the loss of a box or parcel, though he be ignorant of the contents, or they be ever so valuable, unless he make a special acceptance. But if the consignor of goods studiously conceal from the captain of a ship, or misrepresent the value or nature of the goods shipped, the ship-owner is not liable, if the goods be purloined on the voyage, though the wrong-doer would be.

Labelling a box or trunk entrusted to a carrier, as containing articles of a different nature and value from its real contents, will dispense with further inquiry as to its contents.

Where a charge misleads the jury, by inducing them to believe there is but one point of defence, when there are two, and the part omitted the most uncertain, the cause will be remanded on writ of error.

THIS was a writ of error to the District Court of the city and county of *Philadelphia;* in which a verdict and judgment were rendered for the plaintiff below.

It was an action on the case, brought by William D. Rapp against Charles P. Relf, to recover the value of certain jewellery, shipped from New Orleans to Philadelphia by the plaintiff's agent, in the ship Georgian, Captain Eldridge, of which the defendant was owner, and consigned to the plaintiff, stated to have been of the value of $1285.79.

It appeared in evidence, that, on the 4th of May, 1837, Captain

[Relf v. Rapp.]

Eldridge received on board the Georgian, at New Orleans, from the plaintiff's brother, Thomas D. Rapp, a trunk, for which he signed bills of lading describing it as one trunk marked and numbered as in the margin, (viz. W. D. Rapp, Philadelphia), consigned to the plaintiff or his assigns, he or they paying freight for such trunk $1.25. The trunk was labelled, "William D. Rapp, Philadelphia — this side up — glass — with care." T. D. Rapp testified that it contained upwards of $1600 worth of jewellery, watches and cutlery; which, however, were of the commonest kind — the jewellery being washed, and the watches worth $36 per dozen, and not suited to the market at New Orleans. They were the residue of a shipment which had been made by the plaintiff from Philadelphia to New Orleans, where a portion were sold by T. D. Rapp, at auction. He further stated, that he several times told Captain Eldridge the trunk contained jewellery, and was worth upwards of $1600, and that his reason for not marking it on the trunk and bill of lading was, on account of there being so many passengers, who might see the bills of lading exposed in the cabin, as they generally were, and might break open the trunk, and take the contents; which was not uncommon. The captain acquiesced in this reason, and said he would take care of it. The witness requested him to put it in the state-room. He said he would, or in an equally safe place. The captain charged, for freight, one dollar. The witness offered to pay extra freight, if he would carry it safe, if it were $5. The captain said he would charge $1.25, and put it in the bills of lading. It appeared that the trunk was a common hair trunk, such as is used for carrying shoes in, tied round with a rope; that it was placed in the hold of the vessel, and, on arrival at Philadelphia, its contents sold for only $354.36. The plaintiff alleged, and called witnesses to show, that it had been broken open during the voyage, and the rest of its contents purloined.

The defendant denied that anything was purloined from the trunk. The captain denied, in his testimony, that T. D. Rapp had informed him of the contents of the trunk, or its value. He stated that the freight usually charged for a valuable article, was at least one-half per cent. Other witnesses testified that the bills of lading were not filled up as they ought to be, for jewellery, and that the charge for freight of jewellery would be one per cent. where it was under the value of $2000; and one-half per cent. where it was over that sum. The price charged, in this case, was the same as if the trunk had been empty. Much other evidence was given.

The Judge charged the jury, that this was an action to recover the value of jewellery put in a trunk at New Orleans, of the value of $1285.79. The general law of common carriers is not brought into dispute. Common carriers are liable, except in certain cases, well understood, such as inevitable accidents, the act

[Relf v. Rapp.]

of God, perils of the sea, &c. The plaintiff puts his case on the ground of embezzlement. In the inquiry, whether the goods were embezzled, the most important and difficult part is to know whether or not the goods were put on board at New Orleans. The question is, was a trunk containing $1600 worth of jewellery put on board at New Orleans? If a trunk containing all the jewellery was put on board at New Orleans, there can be no dispute that it was not delivered; and, if it were purloined, defendants are liable. This depends on the testimony of Thomas D. Rapp, unsustained by anything else. He is positive in his statement; and, if he does not tell the truth, he is unquestionably a perjured man. It strikes me, as very remarkable, that no other witness or circumstance is produced. He was a clerk in a respectable employment. Why not call on somebody to see what the trunk contained? There are no other corroborating circumstances. It was first taken from here, intrusted by his brother. Was it not natural that some inventory should be taken? Yet it does not appear any was taken. All that is produced is a paper made out after the commencement of 1837: all the usual precautions were omitted; thus resting the case on his veracity. These are the only points I shall call your attention to:

I am requested, by the defendant's counsel, to charge you: First; That it was not the duty of the captain of the ship Georgian to ask what were the contents of the trunk confided to his charge at New Orleans. If the captain wished to know what was in the trunk, he was bound to inquire, unless deception was used, to mislead him. Secondly; That it was the duty of the shipper to cause to be placed on the bill of lading the nature and character of the contents of the trunk. It was not the shipper's duty to do so. Thirdly; That the shipper having put jewellery and watches in a trunk ordinarily used for carrying shoes, and marked it " glass," would prevent a recovery, if full information was not given of its contents. If it was so marked, and no communication made of the contents, it is so.

The defendant excepted to the charge of the court upon the first and second points.

Errors assigned:

1. The Judge erred in charging the jury, without any qualification, that if the goods missing had been embezzled, the plaintiff must recover.

2. In charging that the captain of the Georgian was bound to inquire as to the contents of the trunk confided to his charge at New Orleans.

3. In charging that it was not the duty of the shipper to cause to be placed on the bill of lading the nature and character of the contents of the trunk.

*Owens* and *D. P. Brown*, for the plaintiff in error.

The loss, according to the evidence, must have been from embezzlement, as there was no proof of robbery. We say the fraud and concealment of the plaintiff occasioned this: but for this, the trunk would not have been put into the hold of the vessel, but into the cabin or run; which is the proper place, in a ship, for valuable articles, and where, it is proved, it is customary to place them. The trunk was such as is ordinarily used to pack shoes; and the freight paid corresponded; and the trunk was marked " glass." All these prevented the captain from taking proper care of it, by putting it into the cabin. In 2 *Kent's Com.* 603, it is said, that if the owner be guilty of any fraud or deception, as by concealing the nature or value of the articles, the carrier is not liable. So in *Jones on Bailm.* 38, it is laid down, the negligence of the carrier depends on the known value of the article. A stage-coachman, ignorant of the contents of the package, would not be liable for placing bank-notes in an insecure place in the coach.

*Kneass* and *F. W. Hubbell, contra.*

The captain was apprised of the contents of the trunk, and received the price he charged; and the carrier is liable in consideration of the price he receives. 1 *Wheat. Selw.* 307. The captain is bound to have a trustworthy crew. 1 *Marsh. Ins.* 242. The shipper is not bound to inform the carrier of the value and contents of the articles. *Titchburne* v. *White,* (1 *Stra.* 145); *Allen* 93. He need not tell the carrier all the articles in a box: if there is money, and it is lost, the carrier is liable, though he is told it is a book. *Gibbon* v. *Paynton,* (4 *Burr.* 2298). The carrier is liable if he receives goods without asking questions. 2 *Kent's Com.* 603.

The question is, if one bring things to a carrier, and use no deception, and the carrier accept, whether he is liable, if the contents are not made known to him; and that he is, appears by the authorities. *Phillips* v. *Earle,* (8 *Pick.* 182); *Story on Bailm.* 362; *Orange County Bank* v. *Brown,* (9 *Wend.* 85); *Hollister* v. *Newlan,* (19 *Wend.* 234); *Cole* v. *Goodwin,* (19 *Wend.* 251).

The opinion of the Court was delivered by

ROGERS, J.—This is an action to recover the value of jewellery shipped by the agent of the plaintiff, at New Orleans, and consigned to him, as is alleged, on board the ship Georgian, Eldridge master; of which the defendant was owner. Defence was made on two grounds; 1. By a denial of any shipment of jewellery, and consequently that none could be embezzled; and, 2. Fraud, by concealing from the captain that jewellery was shipped, and fraudulently representing that the trunk contained glass — an article of much inferior value.

On an attentive examination of the charge, we think the jury would be warranted in believing, that, in the opinion of the court, the only material inquiry was, whether the goods had been em-

bezzled; which, of course, includes the question of delivery into the custody of the master of the ship. "In the inquiry whether the goods were embezzled," say the court, "the most important and difficult part is to know whether or not the goods were put on board at New Orleans. The question is, was a trunk containing $1600 worth of jewellery put on board at New Orleans? If a trunk containing all the jewellery was put on board there, there can be no dispute that it was not delivered; and, if it was purloined, defendants are liable." After calling the attention of the witnesses to the testimony, the court proceeds to say; "these are the only points I shall call your attention to;" thus leaving the jury to infer, and doubtless they must have so understood it, that the only matter worthy of investigation, was the delivery of the goods, and their consequent embezzlement. If this was the ordinary case of the loss of goods intrusted to a common carrier, there is nothing exceptionable in the charge; but it is not so; for it involves another question, equally as important as the first, attended with equal, if not more uncertainty; that is, the alleged fraud arising from the misrepresentation of the plaintiff's agent. The defendant complains, and with great justice, that the attention of the jury was not called to this part of the defence, in such a manner as to make it a prominent matter for investigation. The uncontradicted testimony is, that the jewellery, if delivered at all, was contained in a trunk of the kind generally used in carrying shoes, and was labelled "William D. Rapp—glass—this side up—with care." The latter is equivalent to an assertion that the trunk contained glass; and, if untrue, it was such a fraudulent misrepresentation as will prevent a recovery against the owner of the ship, even if the jewellery was purloined by the captain, or any one of the crew. A common carrier is answerable for the loss of a box, or parcel of goods, though he be ignorant of the contents, or though those contents be ever so valuable, unless he made a special acceptance. Even that principle has been doubted; but the better opinion is, that the carrier would be responsible. And this is reasonable; because he can always guard himself by a special acceptance, or by insisting to be made acquainted with the general nature of the articles, and of their value, before he consents to receive them. If he omits this, he shall not escape responsibility, because of his own negligence. But the rule is subject to a reasonable qualification; and if the owner be guilty of any fraud, or imposition, in respect to the carrier, as by concealing the value or nature of the article, or deludes him by his own carelessness in treating the parcel as a thing of no value, he cannot hold him liable for the loss of his goods. Such an imposition destroys all just claim to indemnity; for it goes to deprive the carrier of the compensation he is entitled to, in proportion to the value of the article intrusted to his care, and the consequent risk he incurs; and it tends to lessen the vigilance the carrier would otherwise

[Relf v. Rapp.]

bestow. 2 *Kent's Com.* 603. The qualification of the rule is as important to be observed, as the rule. It is absolutely necessary for the protection of carriers; who would otherwise be exposed to great frauds. With what show of justice can a man ask to be paid for an article of great value, when he has induced the carrier, by a false assertion, to believe that it is of much inferior value? It is just, when he asks compensation from the innocent owner, to hold him strictly to his own declarations. He has no right, in order to cheapen the freight, which is the usual inducement, to expose the owner to an increased risk; as must inevitably be the case, where the nature and value of the article are studiously concealed. I take a distinction between the owner and the wrong-doer; for, undoubtedly, notwithstanding the conduct of the plaintiff, the person who purloined the goods would be responsible for their value, either criminally or in a civil suit. But it would be unjust to make the owner pay damages for a loss which may have been the consequence of the fraudulent act of the shipper, by inducing a relaxed attention, or may have been perpetrated by a confederate of his own. In addition to the captain and crew, there were passengers on board. Indeed, this is the alleged reason that the bill of lading, and the label on the trunk, were different from the articles which the trunk really contained. In cases of common carriers where there is no notice, the better opinion seems to be, that the party who sends the goods is not bound to disclose their value, unless he is asked. But the carrier has a right to make the inquiry, and to have a true answer; and, if he is deceived, and a false answer is given, he will not be responsible for any loss. If he makes no inquiries, and no artifice is used to mislead him, then he is responsible for any loss, however great the value may be. *Story on Bailm.* 362. But when the shipper voluntarily informs the carrier of the value or of the nature of the article, what need of further inquiry? Surely he cannot complain that the carrier believes his statement to be true. If untrue, it would be a violation of every principle of common justice, to cast the responsibility upon the innocent owner, merely because his agent puts faith in the declarations of the shipper. And what difference is there, in effect, between the case put, and labelling a box or trunk as containing an article differing in nature and value from its true character? The one is as likely to delude the carrier as the other, and is as likely to be used as a means of fraud.

After calling the attention of the jury to what it would appear was thought the only matter worthy of consideration, the court say, "I am requested by the defendant's counsel to charge you, that it was not the duty of the captain of the ship Georgian, to ask what were the contents of the trunk, confided to his charge, at New Orleans; that it was the duty of the shipper to cause to be placed on the bill of lading the nature and character of the contents of the trunk; that the shipper having put jewellery and

[Relf v. Rapp.]

watches in a trunk ordinarily used for carrying shoes, and marked it 'glass,' would prevent a recovery, if full information was not given of its contents." To these questions, the court answer: "If the captain wished to know what was in the trunk, he was bound to inquire, unless deception was used to mislead him; that it was not the shipper's duty to put upon the bill of lading the nature and character of the contents of the trunk. And if it was so marked, and no communication made of its contents, it is answered affirmatively." It cannot be said that these answers, taken together, are wrong in the abstract; yet we cannot but feel that they are not such answers as were calculated to give the desired information to the jury, and that connected with the remarks before made by the court, they tended to divert the attention of the jury from the turning point of the cause. It was his (the captain's) duty, to inquire the contents of the trunk, unless deception was used to mislead; but what the deception was, is not explained. The court should have instructed the jury, that if they believed what was not disputed, that the trunk was marked "glass, this side up, with care," he was not bound to inquire the contents of the trunk; that the assertion of the shipper, that it contained glass, dispensed with any further inquiry as to its contents. The party has a right to a plain and intelligible answer, predicated on the facts in evidence. And if after giving the charge a fair construction, it tends to mislead the jury, by inducing them to believe that there is but one point of defence, when in truth there are two, and the point omitted the most uncertain, the cause should be remanded for another hearing. The trunk being labelled "glass," it is incumbent on the shipper to explain, why it was so marked; and this the witness has endeavoured to do, by saying it was purposely so done, for reasons given by him, and that the contents of the trunk were made known to the captain. But this, which is the debatable ground, is positively denied; and some circumstances exist on both sides, which give a colour of truth to the respective statements. Whilst it is admitted, that public policy requires that common carriers should be held to an extraordinary responsibility, it is necessary to watch, with increased vigilance, the conduct of the owner of the goods. It should be free from the suspicion of fraud or deception. The carrier is in the nature of an insurer, and he has a right to a true account of the character and value of the goods he insures, and has a right to be protected against imposition or misrepresentation of the nature and value of the articles intrusted to his care.

Judgment reversed, and a *venire de novo* awarded.