KURTZ (UNITED STATES v.). See Cases Nos. 15,546 and 15,547.

---

## Case No. 7,955.

### KUTER v. MICHIGAN CENT. R. CO.

[1 Biss. 35; 10 West. Law J. 416; 1 Pittsb. Leg. J. 30.][1]

Circuit Court, D. Illinois. Oct. Term, 1853.

CARRIERS — DUTY AS TO CARRYING MONEY—MERCHANDISE AND PROPERTY—DUTY OF SHIPPER TO DISCLOSE CHARACTER OF PROPERTY—WHEN CARRIER SHOULD MAKE INQUIRY—LIABLE AS BAILEE.

1. A clause in the charter of a railroad company, requiring them to transport "all merchandise and

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 10 West. Law J. 416, contains only a partial report.]

property." does not oblige them to become common carriers of money.

2. Nor does the fact that they transport money for an express company under a special contract, make them such common carriers, and subject to extraordinary responsibilities as such.

3. The general rule that the shipper is not bound to disclose to the carrier the kind, quality or value of the property, and that, in the absence of notice, or fraud or artifice on the part of the shipper, the carrier is liable, notwithstanding there was no disclosure, must be construed and applied subject to the usual course of business. If the property is put up or packed in a manner calculated to deceive the carrier, he does not become subject to extraordinary responsibilities as such; but if there is justly any doubt about the contents of a package, he should make inquiry.

4. An emigrant having packed and shipped a quantity of gold coin in the center of an ordinary dry-goods box, filled with clothing and household goods, *held*: If this was calculated to deceive the company as to the value of the contents, and by no reasonable inference could they have supposed that the box contained coin, they are not liable as common carriers. If, however, the defendants knew that parties emigrating, like the plaintiff, were in the habit of putting up valuable articles and money among their household goods, and from such knowledge might infer that the box of plaintiff might contain money, then it became their duty to make inquiry, in order to relieve themselves from liability.

[Disapproved in Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 718.]

5. In every case where property is delivered to a carrier, to be transported for hire, if the circumstances are such as to relieve him of his extraordinary responsibility as a common carrier there is still an implied contract for ordinary care.

[Cited in Michigan Cent. R. Co. v. Carrow, 73 Ill. 357.]

Assumpsit for goods and money delivered to defendants, to be transported from Detroit to Chicago. The first count alleges a delivery, specifying the articles, to defendants as common carriers. The second, alleges a delivery of the property for transportation, to be delivered to plaintiff at Chicago within a reasonable time. The third, alleges a general bailment. The fourth, charges that the defendants were common carriers, and agreed to carry and deliver, etc. Plea of general issue.

The plaintiff, in April, 1852, was moving with his family from Schuylkill county, Pennsylvania, to Kane county, in this state; and, on the evening before his departure, packed in an ordinary dry-goods box, which was well nailed and fastened, and bound with one iron and two wooden hoops, a quantity of clothing and various articles of household use, books, etc. In the middle of the box was placed a package of gold coin, amounting to nearly eighteen hundred dollars, carefully wrapped in a handkerchief. The box arrived in Detroit in apparent good order and condition, and was there received by the agents of defendants, to be transported to Chicago. The plaintiff desired the box to go on the same train with himself and family, but was told that it could not, but that it would be in Chicago sooner than he; that they would send it that day. This was the 20th of April. The box never reached Chicago; indeed, there was not the slightest evidence in the case to show what became of it or its contents. No question was made about the liability of the defendants for the value of the contents of the box other than the money. The defendants were a corporation created by a law of the state of Michigan, in 1846. It was alleged as a ground of defense, that they were not common carriers of money; that their charter did not make them so; and that their agents were not authorized to receive money for transportation; that, in point of fact, this money was delivered to them, if at all, under circumstances calculated to deceive them, there being nothing about the box to indicate that there was in it anything of extraordinary value,—in fine, that it operated as a fraud on them, though none was intended.

I. N. Arnold and C. Beckwith, for plaintiff.

H. G. & E. S. Shumway, for defendants.

DRUMMOND, District Judge (charging jury). The first thing to be considered is as to the proper construction of the charter. By it they were required to transport all merchandise and property. It is insisted by the plaintiff's counsel that this includes money. "Property" is a word of very enlarged meaning. It comprehends ordinarily everything which is valuable and is subject to disposition and to protection under the law. But it is plain, in order to arrive at the true meaning of the legislature when using the word in this charter, we must look at the connection and circumstances. What was the intent of the law? The state was chartering a railroad company to perform all the usual business and offices of such a company, and we must construe this law with reference to the subject matter of the grant. At the time this charter was granted, it was not incumbent, as a general thing, on common carriers of merchandise and property, to transport money. They might become carriers of money, undoubtedly, but this was considered out of the ordinary line of business, and subject to unusual risks, requiring corresponding care and compensation. The word "property," as used in the charter, must certainly have some limitation. It did not include all kinds of property. We must understand the meaning to be such property as is usually carried on a railroad. If it had appeared by the evidence that it was the practice of railroad companies to transport all money offered, then it might be different. As it is, I think a fair interpretation of their charter would justify a refusal on their part to act as common carriers in the carriage of money. But if it be conceded that they are not obliged by their charter to be common carriers of money, there is no doubt they may become so by their acts,—they may hold themselves out to the world as carriers of money. It seems that the defendants did

transport money for the express company, which, as well as all other property carried by the express company, was under the sole charge of a messenger of the latter company, and at their risk, under a special contract, which certainly greatly restricted the common law liability.

But that circumstance alone did not make them common carriers of money, and subject to the extraordinary responsibilities of common carriers of money. If you shall believe the defendants were common carriers of money, and that no notice of any restriction or limitation of their liability was brought home to the plaintiff, then the plaintiff, subject to the qualification hereafter stated, was not bound to disclose to the defendants the contents of the box in order to render them liable; but if the defendants wished to guard themselves against risk, they should have inquired as to the contents of the box.

As a general rule, a person who delivers to a carrier any article or property, of which the latter is a common carrier, is not bound to disclose the kind, quality or value of such property, and the carrier, in the absence of notice, or fraud, or artifice on the part of the person making the delivery, is liable notwithstanding no disclosure is made. But this rule must be taken and applied subject to the usual course of business, and this is a very important qualification of the rule itself. If, in point of fact, the property is put up or packed in such a manner as is calculated to deceive the carrier, then he does not become subject to the extraordinary responsibilities of a common carrier. But if there may be justly any ambiguity or doubt about the contents of a package or box, resulting from its examination or appearance, then the consequences of such doubt must fall upon the carrier, if he do not make inquiry. The thing must be calculated to deceive, and if you believe that it was contrary to the usual course of business for money to be packed in the way proved in this case; that it was calculated to deceive the defendants as to the value of the contents; or that it operated as a fraud upon the defendants, though none was intended,—then they are not liable as common carriers. And by "operating as a fraud," I mean that by no reasonable inference could the defendants suppose the box contained what was actually within it. It is upon this principle that common carriers of passengers are liable for the ordinary baggage of a passenger and the money for usual traveling expenses, which may be in a trunk, but are not liable for a sum of money beyond this limit, nor for merchandise found therein. If, however, the defendants knew, as is insisted they did, that parties emigrating like the plaintiff, were in the habit of packing up valuable articles and money among their household wares, and, from such knowledge, might infer that this box of the plaintiff's might contain money, then it was their duty to make inquiry, in order to relieve themselves from liability.

There is a count for a general bailment. If it be true that these defendants were not common carriers of money, or if there was any improper means or artifice made use of to conceal the value of the box, or to mislead, or to deceive the defendants, they might not be liable as common carriers; still, in every case where a party delivers to a common carrier an article of property to be transported to a particular place, for a certain sum, if there be any facts in the case which would relieve the carrier from the responsibilities of a common carrier, as by special contract, or notice, or concealment of the value of the article—actual fraud being absent—there is an implied contract on the part of the carrier to take due care of. the property. This only changes the obligations of the carrier, and does not free him from all responsibility. He is still bound to the use of ordinary care. If in this case you shall believe that the defendants were not common carriers of money, or that this money was so placed as to mislead or deceive the defendants as to the value of the box and its contents, yet if you shall also believe that the defendants have been guilty of negligence, if they have not taken ordinary care of the box and its contents, then the defendants are liable for the loss. But if, on the contrary, you shall believe the defendants were not guilty of negligence, but exercised ordinary, reasonable care about the property,—and by ordinary care is to be understood such care and diligence as a prudent man exercises over his own property, supposing it to be what it purported to be from the general appearance and aspect of the box,—then they are not liable for the loss of the money. But if you shall believe there was an improper concealment of the value of the contents of the box, and this concealment was the cause of negligence, if any negligence existed, then the defendants cannot be held liable for what was the result of the act or conduct of the plaintiff.

It is admitted by the plaintiff's counsel that if you shall be of opinion that the defendants, as to the money, were mere ordinary bailees, it devolves upon the plaintiff to prove affirmatively that the defendants have been guilty of negligence.

NOTE. · Common carriers are not liable for the loss of money packed among other goods in a box, in such a way as to deceive and mislead them. If they are to be held liable, they should be told of its contents. Chicago & A. R. Co. v. Thompson, 19 Ill. 578. A common carrier may qualify his liability by a general notice of any reasonable requisition to be observed as to the manner of delivery, entry of parcels, information of contents, etc. Merriman v. The May Queen [Case No. 9,481]. But he cannot, by a general notice, limit, avoid or restrict the liability devolved on him by the common law, or the salutary grounds of public policy. Id.

In order to charge common carriers as insurers, they must be treated in good faith: concealment, artifice. or suppression of the truth, will release them of this liability. American Exp. Co. v. Perkins. 42 Ill. 458. Although a common carrier is answerable for the loss of a parcel, whatever its value, unless he make a special acceptance, if the consignor studiously conceal from the carrier,

or misrepresent the value or nature of the goods shipped, the ship owner is not liable if the goods are purloined on the passage, but the wrong-doer would be. Relf v. Rapp, 3 Watts & S. 21. Labelling a box or trunk entrusted to a carrier as containing articles of a different nature and value from its real contents, will dispense with further inquiry as to its contents. Id. A carrier of passengers is liable, if baggage be lost, though without the carrier's fault. Hawkins v. Hoffman. 6 Hill, 586. By "baggage" is not understood "money," unless it be for traveling expenses. Id.

A common carrier is liable for money stolen from a passenger's trunk, which was placed there by him for his personal use and traveling expenses; but not for what he put there to use in buying clothing. Hickox v. Naugatuck R. Co.. 31 Conn. 284. A gold watch and chain, and coin, are not deemed baggage, as between passenger and carrier. The Ionic [Case No. 7,059]. See case of Woodward v. Illinois Cent. R. Co. [Cases Nos. 18,006, 18,007]; also, Citizens' Bank v. Nantucket Steamboat Co. [Case No. 2,730]. As to money carried in a trunk, see Orange County Bank v. Brown, 9 Wend. 85; Gibbon v. Paynton, 4 Burrows, 2298; Batson v. Donovan, 4 Barn. & Ald. 21. Carrier is liable for a reasonable amount of bank bills carried in a trunk. Illinois Cent. R. Co. v. Copeland, 24 Ill. 332; Merrill v. Grinnell, 30 N. Y. 594. Not, however, beyond what is necessary for personal expenses. Davis v. Michigan S. & N. I. R. Co.. 22 Ill. 279; Hickox v. Naugatuck R. Co.. 31 Conn. 281. And held not liable even for that amount. Grant v. Newton, 1 E. D. Smith, 95. This was, however, in an inferior court, and the rule has not been sanctioned by higher authority. A watch properly carried in a trunk. Jones v. Voorhees. 10 Ohio. 145; Pudor v. Boston & M. R. Co., 26 Me. 458.

As to limitation of responsibility, by notice or contract, see Farnham v. Camden & A. R. Co.. 55 Pa. St. 53; Stedman v. Western Transp. Co.. 48 Barb. 97; Prentice v. Decker. 49 Barb. 21; Limburger v. Westcott. Id. 283; Belger v. Dinsmore, 51 Barb. 69; Betts v. Farmers' Loan & Trust Co., 21 Wis. 80; Boorman v. American Exp. Co., Id. 152; Evansville & C. R. Co. v. Young, 28 Ind. 516; American Exp. Co. v. Sands. 55 Pa. St. 140. A passenger who has surreptitiously introduced into a coach an article of great value, for the purpose of getting it carried for nothing, cannot recover in case of loss. If, however, the carrier learns the fact, and charges accordingly for the article as extra baggage, he would then become liable. Hellman v. Holladay [Case No. 6,-340]. Consult 2 Kent. Comm. 603; Ang. Carr. §§ 115. 116; Story, Bailm. §§ 565–569; 2 Pars. Cont. 254, 255.