Robertson, Ch. J.
Upon the trial in this case, the counsel for the defendants, at the close of the testimony on the- *493 part of the plaintiff, moved to dismiss the complaint upon several grounds; one of them being that there was fraud on the plaintiff’s part in concealing from the defendants the value of the property in controversy, alleged to have been carried by them, which motion was refused. After the testimony upon both sides had been concluded, the counsel for the defendants requested the court, among other things, to charge, “ That the plaintiff" was guilty of a fraud in so packing the goods, and in the preparation of the packages, as to conceal the nature and value of the contents intentionally, and concealed the character and value of the property from the defendants, and by such fraud induced them to receive the goods for transportation as ordinary merchandise, and that by reason of such fraud she cannot recover in this action.” Or if the court refused such requests, then to charge the jury, among other things, “ That, if the plaintiff intentionally disguised the packages, making them to appear as of less value than they in truth were, and concealed from the defendants the true nature and value of the contents, and the defendants received the packages ignorant of their true character and value, they ” could “ not be held liable as common carriers in this action.” The court did not so charge; but, on the contrary, instructed the jury that “ as matter of law the defendants were liable for all the property put in the plaintiff’s boxes, whatever it might have been, if lost between Buffalo and New York.” To that charge the counsel for the defendants excepted, as well as - to the omission or refusal of the court to charge as previously requested.
The articles claimed to have been missing or injured were in two or more of certain trunks, chests and dry goods boxes, (for the testimony is, a little uncertain or confused as to which they were in,) undertaken to be transported by the defendants for the plaintiff from Buffalo to New York. The distinctive appellations of those different kinds of receptacles or cases were only sometimes adhered to by the counsel and witnesses, on the trial, and even by the court when *494 speaking of their contents or condition, but were often times confounded andused indiscriminately, creating thereby considerable embarrassment in the application or reconciliation of the testimony. Thus the plaintiff, in giving her testimony on her.own behalf, upon cross-examination, after acknowledging that she had no memorandum of the contents of the trunks at the time she received them at the end of their route, upon being asked how many articles she could remember were in those trunks at that time, first stated in answer, “ a lox almost full of books.” After enumerating other articles as being in the trunks, upon being asked “ what other articles were in the boxes when they came to hand,” she continued her enumeration, but finally said, “the greatest value lay in the books.” She was then asked, “ In what chest or box were they packed;” to which she replied, “They were in the regular book box,” and then added, “I endeavored to have the cases look as much like emigrants’ luggage as possible, so that nobody would suspect that any thing of value was in them. The boxes were bound with willow strips.” It (i. e. the book box) was not one of the chests she had previously named. “ It resembled an ordinary dry goods box,”
All, therefore, or some of the cases containing the plaintiff’s property, presented an external appearance, not only not indicating the value of their contents, such as costly silk dresses and materials therefor, lace, plate, jewelry, valuable curiosities and ornaments, but were actually so disguised externally as to impose upon one who merely looiked at the outside. If the plaintiff intended by “ cases” only the boxes, what goods were not in them for which the defendants would be liable might have been ascertained. But part, at least, of the very goods which formed the subject of the claim, such as an ice pitcher, butter knife, pie knife and card case of silver, a thimble of gold, two toilet sets of Bohemian ware, and these valuable books were in one of those boxes, packed under the direction of the plaintiff’s mother, the valise in it containing silver ware and other >y^luables. So that the court cannot apportion the damages *495 awarded, and give the plaintiff an opportunity to correct the verdict by remitting part of the damages, if she was not entitled to recover for goods contained in such disguised packages. It is true that where no artifice is used, carriers may be bound for the contents of all packages carried' by them, where they do not limit their liability by a notice, since it is their own fault, if they do not inquire respecting their value. But they are entitled to assume that no greater value is contained in a package than its outside appearance warrants, which is as strong a representation as words. Jewelry, gems, plate, lace and costly silks and velvets, would hardly be suspected to be packed in cases outwardly resembling those in which emigrants bring over their household goods. Chancellor Kent, in his Commentaries, [vol. 2, p. 603,) lays it down as a general rule, that<c if the owner be guilty of any fraud or imposition in respect to the carrier, as by concealing the value or nature of the article, or deludes him by his own carelessness in treating the parcel as a thing' of no value, he cannot hold him liable for the loss of the goods.” That doctrine is fully sustained by the authorities cited in the notes, (Gibbon v. Paynton, 4 Burr. 2298; Batson v. Donovan, 4 B. & Ald. 21; Phillips v. Earle, 8 Pick. 182; Baldwin v. Collins, 9 Rob. Louis, 468,) and is similarly stated by Justice Story in his work on Bailments. (565.) In other cases, (Edwards v. Sherratt, 1 East, 604; Titchburne v. White, 1 Str. R. 145; Relf v. Ralph, 3 Watts § S. 21,) courts appear to have gone the length of even holding that in any case, in order to make the carrier liable, some notice1 of the value of the article must be given to him. That, however, seems to be qualified by the carrier’s having previously limited his liability by requiring notice. Where, however, a box containing valuables is so disguised as to resemble those which generally contain only articles of little value, and the carrier is thereby imposed upon, it is well settled that he is not liable for its loss. [Bradley v. Waterhouse, 1 Mood. & M. 154. Story on Bailm. 77. Relf v. Ralph, 3 Watts & S. 21. Orange County Bank v. Brown *496 9 Wend. 116.) In the case last cited, (Orange County Bank v. Brown, where the action was for money contained in a traveling trunk,, and not disclosed to the carrier, Justice Nelson, in delivering the opinion of the court, says: “In the absence of notice, if any means are used to conceal the value of the article, and thereby the owner avoids paying a reasonable compensation for the risk this unfairness, and its consequences to the ” carriers '“ upon the principles of common justice, as well as those peculiar to this action, will exempt them from the responsibility.” But he seems subsequently to imply that the effect of'such fraud is limited to the carrier’s contract of absolute insurance against any thing but unavoidable accident, still leaving him liable as f a.bailee without hire; for, he adds, referring to the case of l Gibbon v. Paynton, (ubi supra,) and a note in Selwyn’s Nisi i Prius, (p. 305,) “ the rigor of the common law is not applied ¡ to him, and he is only held liable for gross negligence . which is the standard of liability of a mere bailee without. ! hire. If, however, the rule in question rests upon the ■ ground of fraud, it would seem difficult to save out of its ¡operation any contract or duty by the carrier to exercise any care of the fraudulent package, so as to create a liability for its loss or injury. He might not have been willing to have assumed the transportation or custody of it at all, if it had not been what it appeared to be. Nor am I aware that a bailee without hire can be held responsible for even gross negligence, as to articles committed to his care, where he is deceived as to their value. Such a qualification of the' general rule could, therefore, only be sustained by assuming that disregarding all considerations of fraud-, the owner, by withholding or disguising the value of the goods, agrees thereby to limit the responsibility of the carriers to goods of that value which appears to be theirs. This, however, would be difficult to be determined, in most cases, if not impracticable, except where a receipt was given for a package, as containing a smaller sum of money than it really contained. In the present case it would have been impos *497 sible to have formed any estimate of what would be the probable value of the unknown contents of emigrants’ chests, of the kind and size of those of the plaintiff.
The question of intent, of course, enters into every question of fraud, but in this case the plaintiff, acknowledged that she meant that all of her cases which were disguised should be so disguised that no one would suspect they contained any thing valuable. This, of course, included the defendants, and, unexplained, is conclusive evidence of fraud.
There is other evidence in the case tending to render ambiguous what cases the plaintiff meant in speaking of their disguise, rendering it proper to have had the question suggested by the defendants’ counsel, as to a fraudulent disguise or concealment, submitted to the jury. Some of the articles claimed, and probably recovered for, as we have seen, were contained in the box packed under the direction of the plaintiff’s mother, after she had left. For them, if the box was disguised so as to deceive the defendants, as well as others, the defendants were not responsible.
The exposure of a common carrier to increased liability by the admissibility of the testimony of the owner of a lost package, as to its contents, is sufficiently great, without depriving him of the benefit of setting up any deception, practiced upon him as to the contents of such package, by. its external appearance. It is hardly to be supposed that the defendants, the owners of a niere line of canal boats, would have undertaken for a month, on their way to Hew York, the care of the valuable articles alleged by the plaintiffs to have been in her cases, had they known their character' and value, for the small freight paid, ($6.25.) '
Although I regret the necessity for it, I think the rules of law require that the judgment should be reversed, and a new trial had, with costs to abide the event.
The motion for a new trial was made, principally on the ground of discovering new evidence to contradict the testimony of the plaintiff, given on the trial of the issues in this *498 action, in regard to certain facts. These were the gift to her of certain drinking, glasses, (cordial and wine,) by a glass importer in. Buffalo, (W. H. Glenny,) also the gift to her of a berry spoon and berry dish, and a fish knife by a Mr. or Mrs. Stephen H. Austin,' and that she had paid an assessment of five thousand dollars. The action was for the loss or non-delivery of such glass ware and berry spoon, and other articles delivered to the defendants as common carriers, to be transported from Buffalo to New York. Such facts evidently formed no part of any matter to be proved on the trial, and were rather collateral to the main issue. It of course would be entirely immaterial, from whom or how the plaintiff obtained the articles in question, or what assessments she paid, provided she owned them, and delivered them to the defendants to be carried. Had she" given no answers respecting the source of her ownership, the evidence now offered would have ,beén wholly irrelevant. It at the most is an impeachment of the plaintiff’s veracity, which is not the kind of evidence authorizing a new trial when newly discovered. (Powell v. Jones, 42 Barb. 24. Platt v. Munroe, 34 id. 295.) The facts which it tended to disprove, were also not so vital in their character, as that their, disproof would .have a serious effect upon the verdict. In regard to the glassware, the plaintiff' now "swears it came from the store of Mr. Glenny, and not from him, and that she so stated on the trial. It is not very difficult to imagine that she might accidentally have made such a slip, or have been _ misunderstood in her statement. The plaintiffs’ attorney swears that in acceding to the case ■as settled, he was not aware it was intended to be used for such a motion, and was therefore taken by surprise in allowing the statement to remain as it is, as to the glassware. The berry spoon was presented to the plaintiff by Mrs! Austin, and the dish and knife were not claimed by her, making that part of the evidence wholly immaterial. As to the assessment, the plaintiff says she stated that she paid one on” not “ of” $5000, a very slight error, if any. *499 It is evident from the whole evidence, that she did not assume to be worth as much as $5000 would be an ordinary-tax upon. The statement itself is very vague—that she “paid an assessment,” where, on what property, or for what purpose, does not appear. An assessment is usually distinguishable from a tax. She does not say she paid it in Bufialo, which is all the evidence for the defendants disproves, and she swears she was so informed' by her father’s executor, which might have been the succession tax of the general government, ‘or any other burden imposed upon her. None of such contradictions are very material.
No reason is given by the defendants for not obtaining their affidavits in question at an earlier date. The affiants were not witnesses accidentally discovered; two were the persons by whom the plaintiff testified that the articles in question were given, and the third was a Buffalo city assessor. They surely could have been reached before, or the reason assigned why they were not, and for such a motion diligence- is necessary. (Sheldon v. Stryker, 42 Barb. 284.) I think, therefore, the order denying the motion for a new trial should be affirmed, with costs.
As to the costs taxed, from which an appeal has been taken, I think the plaintiff was entitled to those which accrue on an argument of a case. (Mechanics’ Banking Association v. Kiersted, 10 How. Pr. 400.) It was an enumerated motion, (General Court Rules, 40, 42; 1 Burrill’s Pr. 469; 2 Caines, 94;) andmust'be heard on a case. (7 Wend. 331.) The order denying the retaxation of the costs should be affirmed, with costs.
Monell, J. concurred.
Barbour, J.
This action was brought to recover damages because of the failure of the defendants to deliver certain goods at their place of destination, in accordance with their duty as common carriers. The case comes before us now on an appeal from the judgment, an appeal from an *500 order denying a motion for a new trial upon the judge’s minutes, and, third, an appeal from an order refusing a new trial upon the ground of newly discovered evidence.
It may be assumed, at the outset, that six packages, alleged tó contain the goods in question, were received by the defendants in Buffalo, to be delivered in Hew York, and that upon the arrival of such boxes there, they were not in good'order, but had the appearance of having been broken open and that some of the goods were finally found to be missing. The question is, whether the goods mentioned in the complaint were really contained in those boxes an d delivered to the defendants for transportation and eventu- ' ally lost, or enough of them to justify the verdict.
The evidence upon that point is wholly insufficient, unless the testimony of the plaintiff herself is to be credited. She testified that when the goods were shipped' she was about twenty-seven years of age, had been married and . separated from her husband, had resided in Buffalo .for the la$t three years, where her father, (then dead,) and her mother, had' formerly been engaged in the business of teaching a school; and that she had then just been married to a clerk, immediately previous to which she had purchased in Hew York and Buffalo $2000 worth of the goods in question. She says that on the day of her marriage, as well as the day before and the next day, she was herself engaged in packing the goods into two trunks, two chests, and two boxes, that she completed the packing of four of the cases, and then left upon her bridal tour, taking with her three trunks containing such articles as she supposed she might need; that one of the boxes was filled with books, (and which, I think, arrived safe,) and the other three with clothing, glass and silver ware, jewelry, coin, &c. some of which were her bridal presents.
The character of the goods thus shipped by the plaintiff, independent of those contained in the three trunks required for her immediate necessities, may be inferred, perhaps, from the description she gives of them; that is to say: *501 Oíie box containing 1000 books, one silk dress of the value of $100, ditto, $250, a full set of glass ware $300, ditto Bohemian $80, linen sheets $50, blankets $100, pearl shells $14, one parasol $200, gold and silver coin $7, bonnet strings $6, Valenciennes laces $300, point d’ Alencon laces $450, three French cambric dresses $40, two books $28, one gold thimble • in pearl box $25 one handkerchief $30, three do. $30, undersleeves $40, scissors $15, ten yards elegant blue fringe $90, velvet for a cloak $200, several pairs of kid gloves at $3 and. $4 per pair, one watch-chain- and charms $200, one diamond ring $100, a great deal of other wearing apparel, 12 dozen towels, some of them worth $3 a piece, blue cloth for a cloak $100, one Chantilly lace shawl $200, one ditto veil $120, six or eight white drésses, one ditto trimmed with embroidery $40, one silver pitcher $40, embroidered flannel skirt $10, silver pie and fruit knives $50, twelve table and damask spreads $120, mosaic pin and ear rings $40, three sun shades $15, one purple merino dress pattern, one bloodstone carved with an Arabic inscription, lot of ribbons $20, one skirt $20, three white muslin waists $54, two portfolios $80, one silk shawl $25, embroidery $30, twelve pillow cases $150, &c.
In, speaking of the set of glass ware, (valued at $300,) she says: “ These were sets of glass goblets, chamber glasses, water glasses, cordial glasses, tumblers, preserve dishes, butter dishes, cream pitcher and water pitcher. There was a full set. I believe there were three hundred pieces. I believe there was not one left whole. No, I am mistaken ; those that I got to replace them were three hundred in number. I could not tell you how many of each there were. I do not think there were as many as three hundred in each.. I could not tell, because I did not buy them. I have been to the china store, since, where they were purchased, and bought them at different times to' make up the full set. Those that I bought since are not so handsome, and they cost me $300. They are y,ot cut glass, those I bought to replace them. The others were. Those I bought *502 since are not worth half as much as those I lost, for those I lost were cut glass and given to me, and were more valuable than the Mown glass was.” She says that she, herself, packed all that glass in one of the chests, which she describes as being about four and a half feet long and eighteen inches in height and width, and that she also put into the same chest some strips of black silk, handkerchiefs, pillowcases, a skirt’ a brocatelle lounge cove, some paper and paste board, lady’s under-clothing and some saw dust or shavings. •
The testimony of the plaintiff in regard to all these matters was wholly uncontradicted. Indeed, to some extent, it may, perhaps, be said that it was corroborated by the statement of her mother.'
In examining the.question as to whether the goods mentioned in the complaint were received by the defendants, it was the duty of the jury to determine whether that evidence of the plaintiff, wholly uncontradicted as it was, was entitled to credit; and, if they arrived at the conclusion that it was not, they were bound to say so by a verdict for the defendants. In considering the matter, it was not only their right, but their duty, not merely to take into view the statement itself, with the appearance and manner o£ the witness, but all the surrounding circumstances detailed by her, and therefrom to determine, in their own minds, whether this party, giving her evidence, as she did, in a case in the result of which she had a direct pecuniary interest, had or had not -told the truth, and that only. It was their duty to see whether a woman of full age and good sense, such as the answers of this witness clearly show her to have been, and occupying the social position which the plaintiff then held, or was about to enter, as a married woman, could reasonably be supposed to" have owned all those articles of dress, finery and jewelry of which she had spoken, or whether, being the owner, such a woman would have packed all those goods into the boxes which she describes, and sent them as freight, instead of taking the *503 most valuable portion thereof in her three trunks. In a word, the jury should have tested the credibility of the plaintiff’s statement, precisely as sensible men would test that of a person whose veracity they had no reason to doubt outside of the statement itself, but who had a direct pecuniary interest in inducing them to believe the same. Eor, in such a case, the hearer, after carefully considering all the probabilities, in view of the facts and circumstances detailed to him, including the personal interest of the narr rat or, either believes such statement to be true, or he finds in the tale itself, with its surroundings, sufficient reason, to doubt its truth, and, therefore, cannot be said to believe it. Minds, however, are differently constituted, and frequently arrive at opposite conclusions upon the same presentation of facts. One juror in this case, for instance, who was innately honest and upright himself, but of reckless and extravagant habits in regard to money matters, might see no reason to doubt the testimony of the plaintiff, either because of her pecuniary interest in deceiving him, or in the character and value of the articles alleged to have been owned by her, and confided to the care of the defendants, while another would discredit the entire tale, and, so far as his judgment was concerned, with equal reason. Indeed, the determination of such a question is within the peculiar and exclusive province of a jury, and a matter .for the exercise of the sound judgment of each one of them; and who shall say they err, let them find as they may ?
But, where a party, who is directly interested in the result of the suit, and, therefore, has a motive for deceiving the jury, makes a material statement upon the witness stand, which is not only doubtful, but, from its nature, entirely contrary'to reason and incredible, no juror can truly say, by his verdict, that he believes it; and if such a verdict is rendered, it will, for that reason, be set aside by the court.' Jurors will not thus be permitted to say they believe facts that are wholly inconsistent with well known physical and mathematical laws, and which inconsistency *504 can be made patent by the exercise of a little reason, coupled "with that common knowledge which every juror’ must be supposed to possess. It is not enough, in such a case, that the manner of the witness is unexceptionable; that her evidence in other respects-is credible, and that she is wholly uncontradicted, or even, as to other portions of her testimony, corroborated. In a word, -a verdict predicated upon belief in a patent impossibility, cannot be permitted to stand.
In the case before us, the plaintiff stated upon the trial, as. we have seen,.that she packed all1 the glass Ware, other than the Bohemianj herself; that there were, at least, three , hundred pieces of it; that she put it all, with the other - articles I have mentioned, into a chest or box, which was only three feet long by eighteen inches high and wide; and, ,in effect, that the three hundred pieces were so large, and of such a description, that it cost $300 to replace them in moulded glass, being an average price of $1 per piece.
Can that statement have been true ? From my own knowledge of the goods known as “blown or moulded glass ware,” and of their prices, I find no difficulty in arriving at the conclusion that $300 worth of such goods, of the, average value of $1 each, could not, by any possibility, be packed whole in the box described by the witness. The question is whether the information which leads to that result in my mind, is that kind, of common knowledge and •information which every man fit for a juror must be presumed to possess. Can it be said, then, that these jurors must have known that the glass in. question could not have been so packed in the 'box ? If it can, their verdict must be set aside because of that physical impossibility. If necessary, I will return to the subject.
The proof of the loss also depends entirely upon the testimony of the plaintiff. She says that when the boxes arrived; they were- much dilapidated, having, apparently, been opened; that, upon opening them, she found a shawl very much mussed, and that more than half the articles *505 packed in Buffalo were missing and lost, to wit, all the bed clothes, all the glassware, (this was not missing, but broken,) several pearl shells, some blue fringe, velvet for a cloak, a lace shawl, some white dresses, a pie knife and fruit knife, table spreads, two portfolios, two pounds of worsted, two work baskets, and some silk lacings. I find no other articles to the loss of which she testifies, although she describes many others as having been owned or packed by her. The value of the goods so lost she fixes, in detail, at about $1415, although, elsewhere, she states that the goods contained in the boxes were wo^th between $4000 and $5000, and those left, from $1000 to $1500. She says that some of the silverware arrived safe, and directly contradicted herself, inadvertently perhaps, in stating, in the first place, that all of the bed clothing was lost, and subsequently admitting that portions of it were delivered; and it may be added that her testimony throughout, and especially in regard to quality and values, was exceedingly loose and indefinite.
The first question for consideration, because the simplest, is whether the motion for a new trial, upon the ground of newly discovered evidence, ought to have been granted.
At the time the trial closed, the right of the plaintiff to recover rested, as has already been said, upon her own testimony. Considering her interest in the result, her self-contradictions, and the inherent improbability of her story, whether more or less, it cannot be doubted that the jury .would then have been fully justified in giving a verdict in favor of the defendants. A very slight additional circumstance, tending still further to disprove her statement, would probably have turned the scale -in their minds against her; and evidence of such circumstance, and, far more than that, it would have been in the power of the defendants to give if they had then been- informed of the real facts, which subsequently came to their knowledge, and -their witnesses had then been present. Those facts were important, and probably might—I may say, as my opinion, *506 they certainly must—have turned such scale. Those facts were as follows:
The plaintiff had sworn, upon the trial, that certain wine and cordial glasses, portion of the goods in question, were a present to her from W. H. Glenny, of Buffalo; that Stephen G. Austin also gave her a handsome berry spoon and dish, and a fish knife; and that she paid an assessment the year she left Buffalo (1864) of $5000 for personal property. The importance of those statements will r.eadily be appreciated. Upon the motion for a new trial, Glenny testified that her evidence in regard to his alleged present, was wholly' untrue; Austin stated that his wife made the plaintiff a present of a berry spoon, but that neither he nor any member of his family gave her a berry dish or a fish knife; and John McManus, one of the city assessors of Buffalo, swore that upon making a complete search of the rolls for the years 1861, ’62, ’63, ’64 and ’65, he found that there was no assessment in any of such rolls against her for personal estate, and that she did not pay any tax on personal property in either of those years.
Can it be doubted that if those contradictions had been presented to the jury, their verdict must have been for the defendants ? I think not; and that, so far as concerns me, disposes of the case. A new trial should have been granted upon that motion.
The judgment and orders in question should be set aside, and a new trial directed; the costs in all, including the costs of appeal in each, to abide the final result.