## THE DENMARK.[1]

### FRITZSCHE *v.* THE DENMARK and others.

*(District Court, S. D. New York.   April 5, 1886.)*

CARRIER OF GOODS BY VESSEL — BILL OF LADING — VALUABLE CARGO — VALUE CONCEALED — LOSS — LIABILITY.

A quantity of highly valuable musk was shipped on the steamship D., under a bill of lading which read: "Not accountable for  *  *  *  highly valuable goods, or beyond the amount of one hundred pounds sterling for any one package, unless bills of lading are signed therefor, and the value therein expressed, and freight paid accordingly." The value of the musk was not disclosed by the shipper, nor was extra freight paid.   It was usual to pay a much larger freight on musk.   The musk was shipped with another case of small value, and like it in external appearance.   On the voyage the box was rifled, and the musk partly lost.   There was no evidence of intentional wrong, or want of ordinary care on the part of the ship.   *Held*, that the shipment was presumptively in bad faith, and that the stipulation of the bill of lading protected the carrier, and that the libel should be dismissed.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.

*Samuel V. Speyer* and *F. A. Wilcox*, for libelant.

*John Chetwood*, for claimants.

Brown, J.  In September, 1880, Fabre & Co., of London, as agents for the libelants, shipped a chest of tea, and two other cases, marked, respectively, F. B. 3, F. B. 2, and F. B. 4.  F. B. 2 and F. B. 4 were boxes of similar size and form; F. B. 2, containing acid of benzoin of the value of £15 16s. 8d., and F. B. 4 some glass bottles, and three small tins of Tonquin musk, of the value of £202 3s.  The musk was in pods, and very valuable, worth £2 10s. per ounce.  The bill of lading contained, among numerous other provisions, the following:

"Not accountable for weight, contents, value, length, measure, or quantities or condition of contents; nor for money, documents, gold, silver, bullion, specie, precious metals, jewelry, precious stones, or *other highly valuable goods,* or beyond the amount of one hundred pounds sterling for any one package, unless bills of lading are signed therefor, and *the value therein expressed, and freight paid accordingly.*"

No value was mentioned in the bill of lading, or stated to the carriers on loading, or any extra freight paid for the highly valuable case of musk.  On goods of such character, if known, the customary rate was 1 per cent. freight,—very much higher than was charged in this case.  Valuable articles, whose value was stated and freight paid accordingly, were usually stored in the store-room of the ship, and a special receipt given for them.  Goods of all sizes, not valuable, and simply requiring dry stowage, were put into hold No. 2 orlop,—the smallest hold of the ship.  The goods in question, not being shipped as valuable, were stowed in No. 2 orlop.  On the voyage to New York the box containing the musk was rifled, and its contents scattered, apparently by some person ignorant of its value.  A portion of one of the cases was lost.  One was subsequently recovered partly filled, and the other nearly or quite empty.  This suit is brought for their value.  The other two cases were delivered uninjured.

The libelant's agents must be assumed to have been acquainted with the fact that extra freight was by custom always payable on musk, as well as with the usages of this line of steamers, and with the bills of lading, and their stipulations, including the stipulation above quoted.  These stipulations had been long in use; and it was the plain duty of the shipper to make known the extreme value of the musk package, and to pay freight accordingly, both from the custom and from the express stipulations.  I cannot regard the shipment of these valuable articles as ordinary merchandise, along with other cases of small comparative value and of similar external appearance, without making known the great value of one of the cases, as other than presumptively a fraudulent concealment and imposition upon the carrier.  The right of a carrier to protect himself against claims for extraordinary damage by stipulating for notice of articles

specially valuable, in order that special care may be given to them, and to require the payment of a proportionate compensation, is now too well settled to be questioned. *Muser* v. *American Exp. Co.*, 1 Fed. Rep. 382; *The Hadji*, 18 Fed. Rep. 459; *Hart* v. *Pennsylvania R. Co.*, 112 U. S. 331; S. C. 5 Sup. Ct. Rep. 151; *Magnin* v. *Dinsmore*, 70 N. Y. 410. No express inquiry by the carrier was necessary. The duty of disclosure was incumbent on the shipper. Good faith required it. *Warner* v. *Western Transp. Co.*, 5 Rob. 490; *Tate* v. *Hyslop*, 15 Q. B. Div. 368. By whom the box was broken open is wholly unknown. There is no evidence by whom it was done,—whether by a passenger or by one of the seamen. There is no evidence of any intentional wrong, or of want of ordinary care, on the part of the ship. The stipulation of the bill of lading must, therefore, be held a protection to the carrier, and the libel must be dismissed, but, under the circumstances, without costs.