Shackt v. Railroad.

SHACKT v. RAILROAD.

(*Jackson.* April 18, 1895.)

COMMON CARRIER. *Released from liability by consignor's act.*

A common carrier is released from liability for loss of goods, where, without fault or negligence on his part, the carrier is induced, by the acts and conduct of the consignor, whether intentional or otherwise, to believe that the goods were of a nature and value different from the truth, whereby freight charges thereon were diminished, and the carrier's risk increased, while his care and vigilance were relaxed. The facts stated in the opinion afford an illustration of this proposition.

Cases cited and approved: 148 U. S., 627; 18 Am. & Eng. R. Cases; 1 Bissell, 35.

FROM SHELBY.

Appeal from Second Circuit Court of Shelby County. J. S. GALLOWAY, J.

FRANK ZIMMERMAN for Shackt.

ESTES & FENTRESS for Railroad.

WILKES, J. This action was instituted before a Justice of the Peace, in Shelby County, to recover from the defendant railroad company the value of a hamper basket and its contents, shipped over the road by the plaintiff from Chicago to Memphis.

There was judgment before the Justice of the Peace for $156.50 and costs, from which the railroad company appealed to the Second Circuit Court of Shelby County, where the case was tried before the Judge without a jury, and judgment was rendered for the defendant railroad company, and plaintiff has appealed to this Court, and assigned errors.

Plaintiff is a native of Hamburg, Germany. He left that city in 1881, and went to the Argentine Republic, where he remained until 1890; thence to Brazil, where he stayed six months; thence to Chicago in 1891, and thence to Memphis in 1893.

He was married in 1892, in Chicago, his wife having been, before and since her marriage, a dress-maker and milliner for a number of years.

When about to leave Chicago for Memphis, on December 12, 1893, the plaintiff delivered for shipment, to the agent of the Illinois Central Railroad Company, a lot of freight to be shipped to Memphis, consisting of four boxes, two trunks, three barrels, one sewing machine, one table, one bundle, table leaves, two bundles of toy chairs, two bundles of bedding, one basket and contents, and a number of other small articles.

Plaintiff carried these goods to the depot, accompanying the express driver, and his statement is, that, the day being bitterly cold, all were eager to be relieved as soon as practicable. The agent of the railroad company, seeing the lot of articles to be shipped, cried out to his assistant "household goods,"

and plaintiff standing by heard this but said noth-
ing, but explains in his testimony that he had never
previously shipped any goods by freight, and did
not know there were different rates of charges, de-
pending on different classifications of freight.   He
inquired the amount of the freight bill, but was told
he could pay it at Memphis, and he made no reply
and said no more.

The goods were placed in a freight car, and it
was sealed, and so remained until it reached its
destination, when, upon opening the car and deliver-
ing the remainder of the goods, it was ascertained
that the basket and contents were missing, and they
have never been found or delivered, though search
has been made for them by the railroad company.

The goods were billed at 1,700 pounds, and the
freight rate charged was 43 cents per hundred, be-
ing what is known as a fourth class freight rate.
Upon the bill was written the words, ''Owner's risk;
rel. to value, $5.''   Plaintiff testifies that he did
not know the meaning of these words, that they
were not explained to him, and he could not ascer-
tain, though he inquired of several persons, but the
best impression he could get was that if the goods
were lost he would receive $500.

The words are shown to mean that the goods
are shipped at the risk of the owner, and the rail-
road company released of all liability beyond $5
per 100 pounds.

The   freight   rate   charged,   43   cents   per   100

pounds, was the usual rate charged for household goods, and the railroad employes state that they were received and shipped as such household goods. This basket is described as being about five feet long and two and one-half feet wide, there being two of them lashed together with a rope or clothes line. No one except the wife of the plaintiff testifies as to the contents of the basket; but she states that it contained the following articles: A blue suit of men's clothes, $25; set tablecloth and napkins, $9; linen tablecloth, $1.75; one linen tablecloth, $1.35; one half dozen solid silver tablespoons, marked "A. S.," $15; two dozen linen towels, $12; seven yards black basket cloth, $4.20; ten yards figured cotton cloth, $1.25; three yards red plush, $4.50; three yards gray Ottoman silk, $3.75; two yards red satin, $1.50; three and one half yards blue velvet, $5.25; ten yards black silk grenadine, $10; seven yards Henrietta cloth, $8.75; five yards brown flannel, $3.25; box tidies, ribbons, and notions, $4; two vases, $8; black skirt, with ruffle, $3.50; bed spread, $1.25; two pictures and frames, $4; three silk scarfs, $3.50; chenille table spread, $7.50; two pair lace curtains, $7; seven roll styles pictures, $5.25; one pair pillow shams, $2.50; one rubber wrapper, $3.50.    Total, $156.50.

It appears from the statement of Mrs. Shackt that these articles were, in the main, goods to be sold by her in her business. The pictures were of

members of the family, and the spoons a gift from her mother.

It is insisted by plaintiff that there was no intentional fraud upon his part in shipping these goods, and that he did not know the rates of charges depended on the classification of the freight or character of the goods shipped, and that the Circuit Judge was in error in denying him a judgment for the value of the goods.

Plaintiff's counsel assents to the proposition of law that, when the value of the goods is deliberately and intentionally concealed by the shipper for the purpose of cheating the carrier out of his reasonable hire, the carrier would not be liable in case of loss, and the shipper could have no relief. But it is insisted that, in this case, the shipper was inexperienced; had never shipped anything in his life, and did not know the rules of railroad companies in fixing rates and classing freights, and, hence, was not guilty of intentionally defrauding or attempting to defraud the railroad company.

We are unable, from the facts disclosed in this record, to regard the conduct of plaintiff in the light in which counsel places it. Plaintiff was a man of intelligence, about 35 years of age, who had traveled much; a machinist by trade. His wife had also engaged in business, and it is hardly credible that these two persons should have been so ignorant in regard to shipment of goods as they profess to have been. Indeed, the circumstances of the ship-

ment tend more strongly to establish a case of pre-
meditated imposition on the railroad company than
one of simple ignorance and innocence. The ship-
ment of silks, satins, laces, curtains, silver spoons,
and other articles of value in a basket, with a rope
around it, and without making known its contents,
is not satisfactorily explained upon the ground of
ignorance. They had two trunks in the same ship-
ment, both with locks; and, while the proof does
not disclose in detail what they contained, we cannot
presume their contents were so valuable as the con-
tents of this basket, without heightening the fraud
in the transaction, and no good reason is given why
these valuables were not placed in the trunks, ex-
cept as to the pictures, that were too large for that
disposition to be made of them.

We can but regard the action of the plaintiff in
standing by and assenting to the statement that they
were household goods, as well as the manner in
which they were shipped and packed, as a construct-
ive if not actual fraud upon the railroad company
to obtain cheaper rates of freight than could other-
wise be had. Some of the articles, especially the
silver spoons, would not have been shipped as freight
by the defendant company on any terms, and none
of the shipment was, strictly speaking, "household
goods," except a few articles, the silks and other
goods being in piece, never having been used, and
upon these the rate would have been, if shipped at
all, as high as $1.70 per 100, instead of 43 cents,

as charged. It is true this rate was not fixed when the goods were delivered at Chicago, but it was so fixed afterward and assented· to by the plaintiff when he received the goods at Memphis.

The case of *Humphreys* v. *Perry*, 148 U. S. Sup. Court, 627, is a well-considered one, and lays down, in emphatic language, the nonliability of the carrier of baggage under similar facts. In that case, a traveling salesman for a jewelry firm bought a passenger ticket for passage on a railroad, and presented a trunk to be checked to the place · of destination without informing the agent of the company that the trunk contained jewelry, which it did, and without being inquired of by the agent as to what it did contain. He paid a charge for overweight as personal baggage; and the trunk was checked. It was of a dark brown color, and of a kind known as jewelry trunks. It had been a practice of the jewelry company to send out trunks filled with goods, the trunks being of similar character to the one in question, and, as a rule, they were checked as personal baggage. But there was no evidence to show that the railroad company or their agents knew what the trunks contained. Now, that was a much stronger case than the one at bar, because in that case the articles were checked as personal baggage, and yet the Supreme Court held:

1. There was no evidence showing, or tending to show, that the agent of the railroad company had any actual knowledge of the contents of the trunk.

2. That there was no evidence from which it could fairly be said that the agent had reason to believe that the trunk contained jewelry.

3. The agent was not required to inquire as to the contents of the trunk so presented as personal baggage; and,

4. The company was not liable for the loss of the contents of the trunk.

This is an important case, and reviews many cases on the subject; and, coming from the highest Court, is strongly persuasive.

In Am. & Eng. Ency. of Law, Vol. II., p. 795–6, are given many instances of the concealment of the nature and value of the articles shipped, which have been held to release the carrier from liability.

In *Railroad Co.* v. *York*, 18 Am. & Eng. R. R. cases, it was held, that when goods were shipped as freight, the shipper must use no artifice or fraud to deceive the carrier, whereby his risk is increased, or his care and vigilance lessened. If there be such fraud or concealment the carrier is relieved from liability. If money be placed in a trunk without communicating the fact to the carrier, and shipped as freight, the shipper is guilty of fraud.

In Hutchinson on Carriers, Secs. 213, 214, it is said: "Fraud may be as effectually practiced on the carrier by silence as by a positive and express misrepresentation. A neglect or failure to disclose the real value of a package and the nature of its contents, if there be anything in its form, dimensions,

or outward appearance which is calculated to throw
the carrier off his guard, whether so designed or
not, will be conduct amounting to a fraud upon
him.    The intention to impose upon him is not
material.    It is enough if such is the practical ef-
fect of the conduct of the shipper, as if a box
or package, whether designedly or not, is so dis-
guised as to cause it to resemble such a box or
package as usually contains articles of little or no
value, whereby the carrier is misled; for, by such
deception, the carrier is thrown off his guard, and
neglects to give to the package the care and atten-
tion which he would have given it had he known
its actual value.

"And if, under such circumstances, money or
other valuables concealed in a package be lost by
his negligence or carelessness, it would be unjust to
charge him with their full value, because such con-
cealment would be a fraud upon him as respects his
compensation for their carriage, and a deception as
to the degree of care which the package required,
and with which he would have guarded it had he
been told the truth—as, where money or jewels, or
other articles of great value, are put into a valise
or box which is generally used to contain things of
small value, and delivery made to the carrier with-
out informing him of the contents, there being noth-
ing in the appearance of the valise to indicate or
apprise the carrier that it was of more than ordi-
nary value, it would be an imposition upon him,

and the law would not lend its aid, in such a case, to make him accountable for the money or other valuable contents if they should be lost."

In the case of *Keeter* v. *The Michigan Central Railroad Co.*, 1 Bissell, 35, Judge Drummond charged the jury, that if a railroad company know that immigrants, like the plaintiff, were in the habit of putting valuable articles and money among their household goods, and from such knowledge might have inferred that plaintiff's box might contain money, then it became the duty of the company to make inquiry in order to relieve itself from liability. The Supreme Court of the United States, commenting on this case, said: "We do not think such view is sound." *Humphreys* v. *Perry*, 148 U. S., 646.

We see no error in the record, and affirm the judgment of the Court below, with costs.