Hibbard and others vs. The Western Union Telegraph Company.

HIBBARD and others vs. THE WESTERN UNION TELEGRAPH COMPANY.

TELEGRAPH COMPANY. (1, 2) *Liability for night messages — Unreasonable stipulation.* (3) *Measure of damage for nondelivery of message.*

REVERSAL OF JUDGMENT. (4) *When erroneous judgment for defendant will not be reversed.*

1. A stipulation printed upon the blanks furnished by a telegraph company to be used in sending all *night dispatches* over its line, by the terms of which such messages were sent at *half* price, on condition that the company should not be liable " for errors or delays in the transmission or delivery, or nondelivery, of such messages, *from whatever cause occurring,*" and should only be bound in such cases to return the amount paid by the sender, *held* to be unreasonable and *void,* as against public policy, so far as it undertakes to protect the company from liability for the negligence or fraud of its agents.

2. A message written upon such a blank, and delivered by plaintiffs to the defendant company, was sent by it, during the night of May 6th, to its office at Milwaukee, where it was received in time for delivery to plaintiffs' agent at Milwaukee (to whom it was addressed) by 9 o'clock A. M. of May 7th. The form was, " Buy twenty thousand, seller June, pay telegraph there;" and the meaning, which plaintiffs' agent would have understood, was, that he should buy twenty thousand bushels No. 2 wheat, to be delivered at any time in June, at the seller's option, and should pay the charges on such message, when delivered. It was *never delivered* to plaintiffs' agent at Milwaukee; and its nondelivery is not excused. *Held,* that defendant is liable for damages accruing to plaintiffs in consequence of such nondelivery.

3. On the 7th of May, No. 2 wheat, to be delivered in June, was worth in Milwaukee $1.48 per bushel; and plaintiffs' agent, if he had received the message in season, would have purchased for them at that price. On the 8th, it was worth $1.55 per bushel. On the afternoon of that day said agent received a letter from plaintiffs, advising him of the sending of such message; but he did not buy any wheat for them. Between May 8th and the last business day of June, the price fluctuated; and on the day last mentioned it was only $1.23¾ per bushel. *Held,*

(1) That the court cannot *presume* that if plaintiffs' agent had purchased the wheat for them on the 7th, they would have sold it on the 8th, while the market price was higher than on the 7th.

(2) That the measure of plaintiffs' damages in such a case is not greater than it would be if the defendant company had itself contracted on the 7th of May to sell them at the then market price wheat deliverable in June, and had made default in such delivery.

(3) That the vendee's measure of damages in such cases, usually, is the amount by which the market value of the article, at the stipulated time of delivery, exceeded the contract price.

(4) That plaintiffs in this case were therefore only entitled to recover *nominal damages* for defendant's neglect to transmit and deliver such message, no actual damage being shown.

4. In such an action a judgment for nominal damages would not carry *costs;* and a judgment erroneously rendered *for defendant* in this case will therefore not be reversed on appeal. *Laubenheimer v. Mann* (19 Wis., 519), and subsequent cases in this court.

APPEAL from the County Court of *Milwaukee* County.

Action to recover damages alleged to have accrued to plaintiffs by reason of defendant's failure to deliver a telegraphic dispatch. Trial by the court without a jury. The court held that defendant was guilty of negligence in failing to deliver such message, and became liable to plaintiffs for any damages sustained by them; but that "no injury had been sustained by plaintiffs which the court could compute in damages," and judgment was accordingly entered for defendant. From this judgment the plaintiffs appealed.

The facts upon which the claim of plaintiffs was based, are more fully stated in the opinion.

*Emmons & Hamilton,* for appellants:

1. The legal intendment of the condition contained in the heading of defendant's blank for night messages is merely to stipulate against those causes of nondelivery which happen without any negligence on the part of the company. *N. J. Steam Nav. Co. v. Merchant's Bank,* 6 How. (U. S.), 383; *Falvey v. Nor. Trans. Co.,* 15 Wis., 133. If the condition be construed as defendant claims, the logical result is, that there was no contract at all; defendant undertook nothing. 2. If such be not the legal intendment, then the stipulation against the defendant's own negligence is *void. True v. Int. Telegraph Co.,*

60 Me., 9 (Allen's Tel. Cas., 530); *Ellis v. Am. Tel. Co.*, 13 Allen, 234; *Birney v. N. Y. etc. Tel. Co.*, 18 Md., 341. On the general subject of the construction and validity of such contracts, counsel further cited *Lawrence v. Minturn*, 17 How. (U. S.), 100, 115; *Transp. v. Downer*, 11 Wal., 129; *Railroad Co. v. Reeves*, 10 id., 176; *York Co. v. Central Railroad*, 3 id., 107–113; *Mich. Cent. R. R. Co. v. M. Springs Man. Co.*, Sup. Ct. U. S., Dec. Term, 1872 (Chicago Legal News, March 8, 1873, p. 278); *Falvey v. N. T. Co.*, supra; *Wood v. Crocker*, 18 Wis., 350. 3. Plaintiffs were entitled to *nominal* damages, at least. Sedgw. on Dam., 46–55. 4. The presumption of law is, that plaintiffs would have sold at the advanced price in the market, and it was not incumbent on them to show a resale. *Leonard v. New York etc. Tel. Co.*, 41 N. Y., 544; *Williams v. Reynolds*, 118 E. C. L., 495; *Rittenhouse v. Ind. Line of Tel.*, 44 N. Y., 463; *Wilson v. L. & Y. R'y Co.*, 99 E. C. L., 632; *Andrew Passinger v. Thornburn*, 34 N. Y., 634; *Cutting v. Grand Trunk R'y Co.*, 13 Allen, 381; *Stone v. Codman*, 15 Pick., 301; *Ward v. N. Y. Central R. R. Co.*, 47 N. Y., 34; *Sisson v. C. & T. R. R. Co.*, 14 Mich., 489. 5. The difference between the market values on the 7th and the 8th of May was not speculative, remote or contingent, and the damages to plaintiffs from the loss of such difference were the direct proximate result of defendant's negligence, and entered into the contemplation of the parties. See cases cited under the last head. 6. The general rule is, that the party injured by a breach of contract is entitled to recover all his damages, *including gains prevented as well as losses sustained*, provided they are certain and such as might naturally be expected to follow the breach. *Griffin v. Colver*, 16 N. Y., 489, 491; *Ward v. N. Y. C. R. R. Co.*, 47 id., 29; *Mesmore v. N. Y. Shot & Lead Co.*, 40 id., 422. 7. The negligence of the defendant prevented plaintiffs possessing the wheat ordered on the 7th of May, and for it defendant is liable to them as for a conversion, viz., for the highest price from that date to the trial. *Romaine v. Van Allen*, 26 N. Y., 309. Evidence of the subsequent de-

cline was inadmissible to defeat a recovery, *Smith v. Griffith*, 3 Hill, 333; *Kent v. Hudson R. R. R. Co.*, 22 Barb., 278.

*Finches, Lynde & Miller*, for respondent, contended, 1. That the contract between the plaintiffs and the defendant company as to the terms upon which this night message should be sent was a valid one. (1) The parties were competent to contract; they mutually assented to this contract; and there was a full and adequate consideration therein expressed. (2) The plaintiffs acted freely in giving their consent to this contract. They were not obliged to adopt it. It is a fact found in the case, that they " could have sent said message as a day message, by paying full rates; that day messages take preference over night messages;" that day messages are always sent subject to certain conditions, stated on the blank used for the purpose; and that plaintiffs had frequently sent day messages under that form of contract. They knew, therefore, that by this contract they must pay *at least full rates;* that unless the message was repeated, and they paid an addition of one-half the full rate, the company would not be liable for "mistake" or "mere delay," beyond "fifty times the sum received for sending the same, unless fully insured;" and that, "in any case, for delays arising from unavoidable interruption in the working of their lines, or for errors in cipher or obscure messages," the message must be insured. These conditions are valid. *McAndrew v. Tel. Co.*, 33 Eng. L. & E., 180; *Camp v. W. U. Tel. Co.*, 1 Met. (Ky.), 164; *Mann v. W. U. Tel. Co.*, 37 Mo., 261; *Ellis v. Am. Tel. Co.*, 13 Allen, 226; *W. U. Tel. Co. v. Carew*, 15 Mich., 525; *U. S. Tel. Co. v. Gildersleeve*, 29 Md., 232; *Wolf v. W. U. Tel. Co.*, 62 Pa. St., 83; *Breese v. U. S. Tel. Co.*, 45 Barb., 274 (Tel. Cas., 685). By refusing to send the message under the contract for transmitting day messages, and adopting the contract for sending night messages, plaintiffs elected to pay only half the usual rates and become their own insurers. There was no compulsion and no artifice employed, but they made their own election, and gave a free and volun-

tary assent to the contract under which their message was sent. What " public policy " forbids them the liberty to decide for themselves whether they shall pay half rates and become their own insurers, or pay full rates, and, upon compliance with other reasonable conditions, make the company their insurer? " The general liberty to contract is the highest policy." See opinion of WOODRUFF, J., in *French v. B., N. Y. & E. R. Co.*, 4 Keyes, 112. See also 24 N. Y., 181–204; 25 id., 444–5; 49 id., 264; 9 Foster, 42–3; 48 N. Y., 498; 26 Vt., 247; 1 Hurl. & N., 392; 5 id., 875; 3 Hurl. & Colt., 337; and especially *Boorman v. Express Co.*, 21 Wis., 152; *Betts v. Farmers' L. & T. Co.*, id., 80. See also the dissenting opinion of APPLETON, C. J., Tel. Cas., 552. 2. As to the amount of damages: (1) It cannot be assumed that the plaintiffs would have sold on the 8th of May, or at any time before the price fell. *Williams v. Reynolds*, 118 E. C. L., 493. (2) The message was unintelligible to the operator. The words used were no notice to defendant that the message was an important one. The loss of profits on a purchase of twenty thousand bushels of No. 2 wheat, cannot, therefore, be " reasonably supposed to have been in the contemplation of both parties at the time of the making of the contract;" and if that be so, the rule is settled that such damages are not recoverable. *Leonard v. Telegraph Co.*, 41 N. Y., 571; *Home v. Midland R. R. Co.*, Law Reports, 7 C. P., 583; *Baldwin v. U. S. Tel. Co.*, 45 N. Y., 750; and the cases cited in these. (3) The parties, by their contract, have fixed the amount of damages, and the time within which demand must be made therefor, to render the company liable. This is a valid agreement. *Wolf v. W. U. Tel. Co.*, 62 Pa. St., 83; *Inland Ins. Co. v. Stauffer*, 33 id., 397; *Trask v. Ins. Co.*, 29 id., 198; *Riddlesbarger v. Ins. Co.*, 7 Wal., 391.

COLE, J. The facts of this case upon which the questions of law arise, are few and undisputed. The plaintiffs, who were engaged in buying and selling grain in Milwaukee, through

their agent, on the 6th of May, 1872, at Port Huron, Michigan, delivered, at about 7 : 25 P. M., to the defendant company for transmission over its line, a message directed to their agent at Milwaukee, in the following language; " Buy twenty thousand, seller June, pay telegraph there." This message was written upon one of the printed blanks furnished by the company for the transmission of night dispatches and was sent by the company to its agent at Milwaukee during the night of the 6th, and could have been delivered to the agent of the plaintiffs by 9 A. M. of the 7th, but was never delivered, and was lost. On the trial no explanation was given, nor excuse shown, on the part of the company, to account for the nondelivery of the dispatch. It is admitted that the message meant, and would have been understood by plaintiffs agent as directing him to buy twenty thousand bushels of No. 2 wheat, deliverable during the month of June, and that he was to pay the expense of sending the dispatch. If the agent had received the dispatch on the 7th, when it should have been delivered, he could and would have purchased wheat at Milwaukee for the market price of $1.48 per bushel. Wheat advanced in the market on the 8th to $1.55 per bushel, when the agent sold some at that price. The agent received from the plaintiffs on the 8th, in the afternoon, a letter advising him of the sending of the dispatch. From the 8th of May to the 29th of June wheat fluctuated in price, and on the last named day, being Saturday and also being the last day the seller would have had for the delivery of the wheat had a contract been entered into according to the dispatch, its market price was $1.23 3-4 per bushel. The contemplated bargain or transaction was what is termed in the chamber of commerce of Milwaukee " buying on option," which means that the seller should deliver the wheat sold at any time at his own option in the month of June. The plaintiff's agent, on the receipt of the letter on the 8th of May, took no steps to make the purchase, and no purchase was in fact ever made as intended when the dispatch was delivered to the company for

transmission. The action is brought to recover damages alleged to have been sustained by the plaintiffs in consequence of the nondelivery of the dispatch.

The blanks furnished by the company for night dispatches, and subject to which the message in question was sent, provide that the company will receive messages for all stations east of the Mississippi river, to be sent during the night, at one-half of the usual rates, on condition that "the company shall not be liable for error or delay in the transmission or delivery, or for nondelivery, of such messages, from whatever cause occurring, and shall only be bound in such case to return the amount paid by the sender."

It is now claimed on the part of the defendant that this stipulation restricting its liability is valid, and exonerates it from payment of all loss or damage which may result from errors or delay in the transmission or delivery, or for the nondelivery, of a night message, from whatever cause occurring. The plaintiffs, it is said, were competent to assent to this stipulation, and did assent to it and are therefore bound by it, having chosen themselves to take the risk of the dispatch reaching its proper destination. If they were not willing to take that risk, it is said, they should have paid the higher rate and sent the dispatch under the contract for transmitting day messages, in which case the company would have been responsible for the correct transmission and prompt delivery of the dispatch to their agent.

In the case of Candee against this same defendant, decided at the present term,* the validity of this condition exempting the company from liability on account of the negligence of its servants in the performance of their duty, was considered. It was there held that such a regulation, adopted for the purpose of protecting the company against the consequences of the

---

*The case here referred to was held on a motion for a rehearing, and will be reported as of the January term, 1874. REP.

negligence or fraud of its agents, was an unreasonable condition, and was void, as against sound public policy. The course of reasoning by which this conclusion was reached, will be seen on reference to the opinion in that case; and no attempt will be made to fortify or add to that reasoning here. It is sufficient to say that upon the admitted facts there was a clear breach of duty by the company in failing to deliver the message which it had undertaken for a valuable consideration to transmit and deliver, and that it must be held responsible therefor. The message was received in Milwaukee, and might and should have been delivered to the agent of the plaintiffs by 9 A. M. of the 7th, if the employees of the company had exercised due care and attention to the business which they had undertaken to prosecute. For, in the language of the court in *Baldwin v. The United States Telegraph Co.*, 45 N. Y., 744–751, " while telegraph companies are not insurers, and do not guaranty the delivery of all messages with entire accuracy, and against all contingencies, they do undertake for ordinary care and vigilance in the performance of their duties, and to answer for the neglect and omission of duty of their servants and agents; " and this degree of liability the law imposes upon them as well in the transmission and delivery of a night as of a day dispatch. The defendant company was therefore responsible for the neglect or default of its servants to deliver the message, and must respond for whatever damages the plaintiffs have sustained by reason of such negligence.

And this brings us to a consideration of the important question as to the proper rule of damages applicable to the case. The court below found as a conclusion of law, that no injury had been sustained by the plaintiffs for which the court could compute damages, and ordered judgment for the defendant. In this we think the court was clearly wrong, because the plaintiffs were entitled to recover nominal damages, at least, as the consequence of the breach of contract on the part of the company in failing to deliver the message. But are they further

entitled to recover the profits on the expected bargain or pur-
chase which was never made, but which, it is claimed, might
have been consummated, had the dispatch been properly deliv-
ered? It is argued in their behalf, that the company is bound to
pay for its default the profit which they might have realized,
providing their agent had purchased the twenty thousand
bushels of wheat for $1.48 per bushel on the 7th of May, and
resold the same on the 8th, when wheat was worth $1.55 per
bushel. Is this the true rule of damages applicable to the
facts? It seems to us not.

It is a most material fact to be kept in view, that no pur-
chase or bargain for wheat was ever made. On the 8th of May,
when the agent was informed of the sending of the dispatch, he
confessedly took no steps to make the purchase. If the dis-
patch had been properly delivered on the 7th, and he had made
the purchase according to the order of his principals, they
would have lost heavily on the contract had they not resold
before they actually had the wheat in possession. For, on the
29th day of June, when the vendor might have delivered on
the contract, wheat was worth in the market 24 1-4 cents on a
bushel less than when the agent would have purchased. Now,
suppose the company had said to plaintiff's agent on the 7th :
" Such a dispatch has been received at the Milwaukee office,
and has been mislaid or lost through the carelessness or fault
of our employees, but we will assume the contract you were
ordered to make, and deliver the twenty thousand bushels of
wheat to your principals, of the designated quality, for $1.48
per bushel, at our option, in June." What would have been
the measure of damages, if the company had made 'default in
the performance of this contract? Mr. Sedgwick lays down
the rule on the subject as follows : " When contracts for the
sale of chattels are broken by the vendor failing to deliver the
property according to the terms of the bargain, it seems to be
well settled, as a general rule, both in England and the United
States, that the measure of damages is the difference between

the contract price and the market value of the article at the time when it should be delivered, upon the ground that this is the plaintiff's real loss, and that with this sum he can go into the market and supply himself with the same article from another vendor. It follows from this rule, that, if at the time fixed for the delivery, the article has not risen in value, the vendee, having lost nothing, can recover nothing." Sedgwick on Damages, p. 260. So that it appears, if the company itself stood in the place of the vendor of the wheat, and failed to fulfill its contract, the plaintiffs could recover nothing, because they could purchase the wheat on the 29th of June, at 24 1-4 cents on the bushel less than they had agreed to pay. They would therefore not have been injured by the company's default to deliver the wheat on its contract. Now, what ground is there for saying that the defendant is in a worse position on account of its failure to deliver the message than it would have been if it had itself assumed the contract as of the time the dispatch should have been delivered? We confess we see no satisfactory reason for extending the liability of the company beyond what it would have been had a contract for the purchase of the wheat been actually made with it, and if it really stood in the place of the vendor. But it is argued, if the message had been promptly delivered, the agent might have made the purchase on the 7th, and resold on the 8th, and thus have realized a profit on the speculation. Even if the company were the vendor of the wheat, the plaintiff could not recover this loss of profits on a resale. That question was expressly so decided in *Williams v. Reynolds*, 18 Eng. C. L., 493 ; and we consider that as a strong authority adverse to the claim of the plaintiffs. That was an action on a contract for the sale of cotton by the defendants to the plaintiff, at the price of 16 3-4 d. per pound, to be delivered in the month of August. The plaintiff contracted to sell the same quantity of cotton, to be delivered in the month of August, at 19 3-4 d. per lb. The defendants failed to deliver the cotton sold by them, and the plaintiff was

consequently incapacitated from performing his subcontract for the sale at a higher price. He claimed damages for a breach of the contract by the defendants, including the loss of profit which he would have realized on the resale. But the court held that the proper measure of damages was the difference between the contract price (16 3-4 d. per lb.) and the price (18 1-4 d. per lb.) on the last day of delivery, and that the plaintiff was not entitled to recover damages for the loss of profit on his subcontract. Such damage, the judges in that case say, does not naturally flow from the breach of the contract to deliver; nor is it such as must be deemed within the contemplation of the parties at the time the contract was entered into, in case of a breach of it. The case of *Hadley v. Baxendale,* 9 Exch., 341, is cited as laying down the true rule; a case which this court referred to with approbation in *Shepard v. Milwaukee Gas Light Co.,* 15 Wis., 318. In the Shepard case, Mr. Justice PAINE refers to a class of cases where parties contract for articles with reference to use or sale on some particular occasion, and where, by reason of want of time, or their situation with reference to the market, they are unable to supply themselves for that occasion in case of failure to deliver, where the difference between the contract price and market price at the time when they ought to have been delivered does not completely indemnify the injured party. See *Richardson v. Chynoweth,* 26 Wis., 656. But the general rule is — where the action is brought by the vendee for a failure to deliver — the difference between the price agreed to be paid and the market price of the article on the day delivery should have been made on the contract. *Havermyer v. Cunningham,* 35 Barb., 515; *Hamilton v. Ganyard,* 34 id., 204. Now, applying the rule laid down in *Williams v. Reynolds* and *Hadley v. Baxendale,* how can it be said that the loss of profit upon a contract which the agent of the plaintiffs might possibly have entered into, but which he never did, naturally resulted from a failure to deliver the message, or could reasonably be supposed to be within the contempla-

tion of the parties as a probable result of such failure, when the dispatch was left with the company to be sent over its line? If the agent had received the dispatch so as to make the purchase on the 7th, what presumption is there that he would have resold at a profit? None whatever. "Selling at a profit is not the natural result of buying with an intention to resell." SHEE, J., *Williams v. Reynolds*. For "that depends on circumstances altogether out of the ordinary course of things." And therefore, if we presume that the agent would have made the purchase according to the order if the dispatch had been delivered, we can not presume that he would have sold the next day so as to realize a profit. The breach of contract complained of is the failure to deliver the message, and the recovery should be limited to an indemnification of the plaintiffs for actual loss sustained. Profits upon a contract never made are quite too remote and uncertain to be taken into consideration. Nor can it be said that the " parties may fairly be *supposed* to have contemplated " such profits as an element in the damages which might result from the failure to deliver the dispatch.

Since this opinion was prepared, my attention has been called to the decision of the court of appeals of New York, in *Baker v. Drake* (published in The Alb. Law Jour., Nov. 29, 1873), which in its general reasoning supports the result reached in this case.

It is apparent that in this case there was a technical breach of contract on the part of the company, for which the plaintiffs were entitled to recover nominal damages. But this would be the extent of the recovery. A judgment for nominal damages would not have carried costs, because the action might have been brought in a justice's court. The dispatch was to be paid for on delivery in Milwaukee; but, as it was never delivered, the plaintiffs were at no expense for its transmission. And while the county court was wrong in not rendering judgment for the plaintiffs for nominal damages, yet in a case like the present, this constitutes no ground for a reversal of the judgment. This point was so ruled in *Laubenheimer v.*

*Mann*, 19 Wis., 519; and the doctrine of that case was approved in *Eaton v. Lyman*, 30 Wis., 41, and in *Jones v. King*, *ante*, p. 422. According to the rule laid down and approved in these decisions, the judgment in the present case must be affirmed.

*By the Court.* — It is so ordered.