JOHN P. BECKER, PLAINTIFF IN ERROR, V. THE WESTERN
UNION TELEGRAPH COMPANY, DEFENDANT IN ERROR.

1.  **Telegraph Company:** ERRORS IN TRANSMITTING MESSAGE:
    LIABILITY FOR. A telegraph company has a right to make
    reasonable rules and regulations relative to sending dispatches,
    and thereby limit its liability for errors not occasioned by gross
    negligence or wilful misconduct. A condition that the com-
    pany will not be responsible for the correct transmission of
    messages beyond the amount received therefor, unless repeated,
    at an additional expense, is a reasonable regulation, and if
    brought home to the sender of a message, or made the subject
    of special contract, will be enforced as to all errors not caused
    by gross negligence or wilful misconduct.

2.  ———: ———: ———: When a message is sent subject to
    such a regulation, the mere fact that there was an error in the
    message as delivered is not of itself, and without further proof
    of carelessness, sufficient to authorize the plaintiff to recover
    anything beyond the amount paid for sending it, and interest
    thereon.

ERROR to the district court of Douglas county. It
was an action for damages, arising out of the alleged
negligence of the defendant in transmitting and deliv-
ering to the plaintiff a telegraphic dispatch in terms
different from those in the message left for transmis-
sion. On Nov. 28, 1873, the plaintiff telegraphed from
Columbus, Nebraska, to W. R. Preston & Co., com-
mission merchants, in New York city, to know what
they could sell 20,000 bushels of wheat for, to be deliv-
ered in December, to which W. R. Preston & Co. re-
plied in the following terms: "Think we can sell
twenty thousand at one fifty—December. Shall we?
Answer quick. W. R. Preston & Co." Instead of
this dispatch being delivered to the plaintiff, one was
delivered to him in the following terms: "Think we
can sell twenty thousand at one *sixty*—December.
Shall we? Answer quick. W. R. Preston & Co."

Thereupon, and on the same day, the plaintiff in-
structed Preston & Co. to sell the 20,000 bushels, and
to apply five cars, then in transit, on the sale.    On the
next day, Nov. 29, plaintiff received from Preston &
Co. a dispatch informing him that they had sold 20,000
bushels at one dollar fifty, to be delivered in Decem-
ber.    This resulted in a telegraphic correspondence,
from which the mistake which had occurred in the first
dispatch became developed, but not until after the con-
tract had been made by Preston & Co. for the sale of
the wheat at $1.50.    The wheat was all delivered by
plaintiff as contracted for by Preston & Co., and this
suit was brought to recover damages sustained by the
plaintiff, by reason of the false information conveyed
in the first dispatch delivered to plaintiff, purporting
to have come from W. R. Preston & Co.    Upon a trial
before SAVAGE, J., and a jury, verdict was rendered in
favor of plaintiff for $6.50 (amount paid for dispatch
and interest) and costs, and from judgment thereon
plaintiff came here upon a petition in error.

*George W. Doane*, for plaintiff in error, cited *Tyler
v. Telegraph Co.*, 60 Ill., 421.    *Rittenhouse v. The
Independent Line of Telegraph*, 44 N. Y., 263.    *Leonard
v. N. Y., Albany & Buffalo Electric Co.*, 41 N. Y., 544.
*De Rutte v. N. Y., Albany & Buffalo Electric Co.*, 30
How. Pr. Rep., 403.    *Western U. Tel. Co. v. Carew*,
15 Mich., 255.    Shearman & Redf. on Neg., sec. 559.

*James M. Woolworth*, for defendant in error.

LAKE, J.

The alleged errors to be considered pertain to the
instructions to the jury.    The charge was full, cover-
ing every point arising in the case necessary for the
jury to be informed upon, and was evidently prepared

with care.   We shall notice only those portions of it which counsel has specially pointed out as being objectionable.

It is said by counsel in his brief that "the most serious error committed" is in those portions of the charge wherein " reference was made to the right of the defendant to adopt rules and regulations whereby to restrict its liability in this class of cases, and the effect of the adoption of such rules and, regulations."   The ground taken on this point, being that there was nothing in the pleadings by which these rules and regulations were made at all material.   In all this we think counsel labors under a mistake.   Evidently the rules and regulations referred to by the judge were those copied into the answer as being on the message blanks, and forming the basis of the alleged contract between the Telegraph Company and Preston & Co. the senders of the message.   The most important of these rules, in fact the only one of them necessary to be here considered, is that which provided that the company should " not be liable for mistakes   *   *   *   of any *unrepeated* message beyond the amount received for sending the same."   The jury were told that this was not an unreasonable regulation on the part of the company, and "if brought to the knowledge of persons dealing with them, and assented to by such persons," would be binding upon them.   The effect of such regulation was given in these words, which we accept as a fair statement of the law :  " If, therefore, you find from the evidence that, at the time this telegram was sent, the rules and regulations which have been offered in evidence were in force along the defendant's line, and such regulations were brought to the knowledge of the senders of the message, or the plaintiff, and assented to by them, and the message in question was not directed to be repeated, and that the defendant

used suitable instruments and machinery, and employed skillful operators, who, in the transmission of the message, used ordinary care, and were not guilty of actual negligence in the premises, then the plaintiff cannot recover anything beyond the price of the message and interest thereon." This, we are of opinion, stated the law correctly, and was necessary to a fair comprehension of the pleadings and evidence by the jury. The fact that the judge referred to these printed conditions upon which alone messages would be sent as "rules and regulations" instead of "agreement" or "contract" is of no importance. We suppose that they were essentially rules and regulations until accepted by delivering the message for transmission subject to them, when they at once became a binding contract between the company and the senders. *Wolf v. Western Union Telegraph Company*, 1 Am. Repts., 387.

The plaintiffs' counsel tendered several instructions embodying the views for which he now contends on this question. They are substantially that a telegraph company cannot, by a rule or regulation like the one just referred to, limit liability for errors committed in the transmission of messages. That such a rule is unreasonable and contrary to public policy. Further, " that the defendant, in order to exonerate itself from responsibility for the mistake, should have shown how it occurred, and in the absence of such proof the jury will be justified in presuming a want of ordinary care on the part of the defendant." These, with other propositions of similar import founded thereon, which in the absence of all restrictions would have been suitable, were rejected by the court, and as we think, properly. The law, as it is finally settled by the better authorities, is otherwise.

In *Redpath v. Western Union Telegraph Company*, 112 Mass., 71, it was laid down that the sender of an un-

repeated message written upon a blank of the company having a printed heading which specified that the company should not be liable for mistakes in the transmission of an unrepeated message beyond the amount received for sending it, could not recover more unless the mistakes were caused by gross negligence or fraud. 17 Am. Repts., 69.    And in *Breese v. United States Telegraph Company*, 48 N. Y., 132, it was ruled that conditions in telegraphic messages as to repeating are reasonable, "and where a person writes a dispatch and signs his name upon a blank containing a printed condition that the company will not be responsible for the correct transmission of the message unless it is repeated at an additional expense, he cannot recover for an error in transmission, the condition as to repeating not being complied with, and there being no allegation of gross negligence or wilful misconduct on the part of the company."    This case is reported in 8 Am. Repts., 526.    In the opinion of Earl, C., this language is used: "But, while they" (telegraph companies) "are bound to transmit all messages delivered to them, they have the right to make reasonable rules and regulations for the conduct of their business.    They can thus limit their liability for mistakes not occasioned by gross negligence or wilful misconduct, and this they can do by notice brought home to the sender of the message, or by special contract entered into with him."    And in the same case Lott, C. C., in speaking of conditions limiting the company's liability printed upon message blanks, said: "The conditions are reasonable, and not against public policy.    On the contrary, they subserve to carry out the objects for which telegraphic associations are created, and especially to secure the receipt of a message in the words in which it is written and delivered for transmission.    A party using such a blank, and writing his dispatch thereon, assents to the

terms and conditions on which it is sent. If he omits to read or to become informed of them it is his own fault. A contract voluntarily signed and executed by a party in the absence of misrepresentation or fraud, with full opportunity of information as to its contents, cannot be avoided on the ground of his negligence or omission to read it, or to avail himself of such information." See also on this point *The Western Union Telegraph Co. v. Carew*, 15 Mich., 525; and of similar import is *Grinnell v. Western Union Telegraph Company*, 113 Mass., 299—18 Am. Repts., 485—where Gray, C. J., says: "According to the weight of authority a regulation that the liability of the company for any mistake or delay in the transmission or delivery of a message, or for not delivering the same, shall not extend beyond the sum received for sending it unless the sender orders the message to be repeated by sending it back to the office which first received it, and pays half the regular rate additional, is a reasonable precaution to be taken by the company, and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated for any cause except wilful misconduct, or gross negligence on the part of the company."

The reasonableness of the rule thus recognized by the courts must be seen and acknowledged by all who give heed to the fact sworn to on the trial by several expert witnesses, and denied by none, that the only known means of reaching absolute accuracy in the transmission of messages by telegraph is by repeating them, that is returning them to the office from which they were sent, for comparison with the original.

Many additional authorities on this point might be cited, but these will suffice, representing, as they do, the current of decision. In the case before us there is no pretence either of gross negligence or wilful mis-

conduct on the part of the company, so that the instructions complained of are not only amply supported by adjudged cases, but were suited to the facts upon which the jury were to pass. Besides, the evidence of the existence of rules and regulations limiting the company's liability, known and accepted by the plaintiff, was clear and convincing, notwithstanding his assertion that he had never read the headings to the message blanks. It is a noticeable fact, however, that the plaintiff in his testimony does not deny that he well understood that such rules and regulations existed, and the importance of having his messages repeated to insure accuracy in their transmission. He admitted on his cross-examination that for several years he had received and sent hundreds of dispatches, sometimes several in a single day, writing them, as occasion required, on the company's blanks, or on ordinary blank paper, so that if he did not know of these rules it was because of his own gross carelessness. From what we have said it follows that the instructions requested by the plaintiff, as to the degree of care the company was bound to exercise in the transmission of the message in question, were properly refused, as by these "the highest degree of care and diligence" on the part of the company would have been requisite to avoid liability to the full extent of the damages caused by the alleged error, notwithstanding the aforesaid limitation. So, too, of other instructions tendered and refused, to the effect that the defendant, in order to escape such liability *in any degree* for the erroneous transmission of the message, notwithstanding said rules and regulations, was bound to show just how the error was brought about, and that it was through no fault on its part.

As we have already seen, where such rules and regulations are in force, and the message is sent with reference to them, the company cannot be made liable

beyond the amount received for sending the message, and interest, except for injuries caused by gross negligence or wilful misconduct on the part of its agents. And so the jury were told, as shown by the instruction above quoted and others of like import.

The eighth paragraph of the instructions is pointed out by counsel as specially objectionable, and was in these words: "If there were such rules and regulations, so assented to, the mere fact that there was an error in the message as delivered would not of itself, without further proof of carelessness, be sufficient to authorize the plaintiff to recover anything beyond the price of the message and interest thereon." There is no error in this instruction, which is fully supported by the authorities already cited. The jury did return a verdict in favor of the plaintiff for the sum paid by him for sending the message, which was all he was entitled to, gross negligence or wilful misconduct being neither charged nor proved, and he being clearly subject to the rule or regulation by which the company restricted its liability to that amount.

As before stated, the charge in this case was evidently prepared with care, and after a full examination of all the authorities cited we are satisfied that it states the law of the case correctly, in every particular, and therefore the judgment must be affirmed.

JUDGMENT AFFIRMED.