D. KEMP v. WESTERN UNION TELEGRAPH CO.

[FILED FEBRUARY 4, 1890.] .

1. **Telegraphs:** INCORRECT MESSAGES: LIABILITY. One P. delivered a message to a telegraph company at its office at Papillion, in this state, to be delivered to a person named at Kansas City, Mo. The message as transmitted was incorrect, whereby P. lost a promised situation and sustained damages. *Held*, That the company was liable for the damages.

2. ———: ———: ———: STATUTE CONSTRUED. Sec. 12 of the act relating to telegraph companies makes such company "liable for the non-delivery of dispatches entrusted to its care and for all mistakes in transmitting messages made by any person in its employ," etc., and provides that it shall not be exempted from any such liability by reason of any "clause, condition, or agreement contained in its printed blanks."

3. ———: ———: ———: ———. Such requirements are reasonable, and are binding on all telegraph companies in the state.

4. ——: INTERSTATE MESSAGES. Where a telegraph company undertakes to transmit a message correctly to another state and fails to do so, it is liable for a breach of its contract, and the party injured may recover all the damages which he sustains by reason of such breach.

ERROR to the district court for Madison county. Tried below before POWERS, J.

*William V. Allen,* and *John S. Robinson,* for plaintiff in error:

Sec. 12, ch. 89a, Comp. Stats., does not seek to regulate the business of telegraph companies; it simply makes them liable for mistakes in transmitting messages, and does not conflict with the interstate commerce clause of the federal constitution. (*Fuller v. R. Co.,* 31 Ia., 205; 17 Wall., 560; *Johnson v. C. & P. Elevator Co.,* 7 S. C. Rep., 254; *Pembina, etc., Co. v. Pennsylvania Co.,* 8 Id., 737; *Smith v. Alabama,* Id., 564; *Morgan's R. & S. Co. v. Louisiana Bk.,* 30 Coop. Ed. U. S. Rep., 237; *Chicago & N. W. R. Co. v. McLaughlin,* Id., 477; *Dow v. Bidleman,* 31 Id., 841; *Atty. Gen. v. Tel. Co.,* 33 Fed. Rep., 129; *Train v. Boston Disinfecting Co.,* 11 N. E. Rep., 929; *Mo. Pac. R. Co. v. Finley,* 16 Pac. Rep., 951; *Goodrel v. Kreichbaum,* 30 N. W. Rep., 872; *Little Rock, etc., R. Co. v. Hanniford,* 5 S. W. Rep., 294.) A state statute changing the burden of proof in cases of negligence is constitutional (*Augusta & S. R. Co. v. Randall,* 4 S. E. Rep., 674); also, one excluding contributory negligence as a defense (*Quackenbush v. Wis., etc., R. Co.,* 37 N. W. Rep., 834); and one providing that agreements in printed blanks shall be null and void (*Hart v. C. & N. W. R. Co.,* 597).

*H. C. Brome, contra:*

A state legislature cannot impose the liability contended for with respect to interstate messages. (*Western Union Tel. Co. v. Pendleton,* 7 Sup. Ct. Rep., 1126.) None of the

cases cited by counsel for plaintiff in error are in point, unless it may be certain *dicta*. It is not pretended that plaintiff in error had any contract with Robertson, nor are damages claimed by reason of failure to secure such contract. To recover damages over and above the price of the message, the burden was upon plaintiff in error to prove actual loss of time or money, and this he failed to do.

MAXWELL, J.

This action was brought by the plaintiff against the defendant in the district court of Madison county to recover damages for the breach of an alleged contract.

It is averred in the petition "That on the 1st day of November, 1886, the said defendant owned, controlled, and operated a line of telegraph wire from Papillion, in the state of Nebraska, to Kansas City, in the state of Missouri, with offices in each of said places in charge of duly authorized agents, at which offices it held itself out to the public to receive and deliver telegraphic messages for hire, and on said date the plaintiff delivered to the defendant at its office in said Papillion for immediate transmission and delivery at Kansas City, Missouri, a message in the words and figures as follows, to-wit:

"Nov. 1st, 1886.

"'To J. C. Robertson, Coates House, Kansas City: Am on my way, Missouri Pacific, Kansas City; arrive eight to-night.                              D. KEMP.'

"Which the said defendant then received from the plaintiff, and agreed to promptly and correctly transmit and deliver to the said J. C. Robertson, at the Coates House, Kansas City, Missouri, without delay; that the plaintiff then paid the defendant's duly authorized agent the sum of sixty-five cents for such services, which was accepted by him as full compensation therefor; that at the said time this plaintiff had an engagement to meet said J. C. Robert-

son, the person to whom said message was sent, at the Coates House, Kansas City, Missouri, at the hour of 8 o'clock P. M., on said day, to contract with him as general agent of the Texas Land and Cattle Company, to enter the service of said company on a salary; that if plaintiff made said contract of employment he was compelled to leave said Kansas City that evening at 9 o'clock P. M., to enter upon the discharge of his duties as employe of said company, and if he did not reach said Kansas City by 8 o'clock P. M., said Robertson was at liberty to hire another man for said situation; that said defendant so carelessly and negligently transmitted said message that when it was delivered to said J. C. Robertson, at said Coates House, Kansas City, Missouri, by the defendant, it read that the plaintiff would reach Kansas City at 10 o'clock that night, making plaintiff's arrival there too late to transact said business; that said message was delivered in the condition last above stated, and in consequence of its reading that plaintiff would arrive at Kansas City, Missouri, at 10 o'clock that night, that said J. C. Robertson employed another man for said Texas Land and Cattle Company, and the plaintiff was deprived of said employment, and the profit of said proposed contract; that the plaintiff was entirely without fault or neglect himself; that the plaintiff expended in money in going to and returning from said Kansas City to see said Robertson the sum of $50, lost six days' time of the value of $30, and was deprived and prevented from making said contract of employment, all to his damage in the sum of $200, which said sum is now due the plaintiff from the defendant and wholly unpaid, and plaintiff prays judgment against the said defendant for the sum of $200, with interest and costs of suit."

To this petition the defendant answered in effect that there was a condition printed on the blanks furnished by it on which to send messages, which provided that the company should not be liable for "mistakes or delays in the

transmission of any unrepeated message whatever, happening from the negligence of its servants or otherwise, beyond the amount received for the sending of the same," etc., and fixing the liability "for mistakes or delays in the transmission or delivery, or for non-delivery, of any repeated message beyond fifty times the sum received for the transmission of the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines or for errors in cipher or obscure messages," etc. Also that the company will not be liable for damages in any case where the claim is not presented in writing within sixty days after the sending "of the message."

On the trial of the cause the court instructed the jury "that, under the law and the agreed statement of the facts herein, the plaintiff cannot recover beyond the amount paid for sending said message, which it is agreed is the sum of 65 cents." The jury returned a verdict as directed, and a motion for a new trial having been overruled, judgment was entered on the verdict.

The testimony tends to sustain the allegations of the petition.

The point in the answer as to the limitation of time in which to bring the action is not referred to in the brief of either attorney, and, therefore, will not be noticed.

Section 12 of chap. 89a of the Compiled Statutes provides that "Any telegraph company engaged in the transmission of telegraphic dispatches is hereby declared to be liable for the non-delivery of dispatches entrusted to its care, and for all mistakes in transmitting messages made by any person in its employ, and for all damages resulting from a failure to perform any other duty required by law, and any such telegraph company shall not be exempted from any such liability by reason of any clause, condition, or agreement contained in its printed blanks."

The defendant is a corporation existing in this state and

having offices at various points therein for the transaction of business, and that business is the transmission, for hire, of messages from points within the state to points on its line within or without the state. It is a common carrier of messages, the agent for the transmission of which is electricity. The agent used in the transmission, however, is not material. ·Suppose the defendant undertook to carry in wagons or other vehicles messages or packages, and under such employment for the plaintiff at Papillion it received the message in question to be delivered at Kansas City, and if it failed to deliver the same it would thereby fail to perform its agreement and would be liable for any damages which the party sending the message might thereby sustain. Why should not the same rule apply where the message is sent by electricity?

The value of a message depends upon its correctness. If it is changed in any material part, it is not the same message as that delivered for transmission and may materially affect the rights of both the person sending it and the person receiving it. Experience has shown that messages can be correctly transmitted from point to point both within and without the state, and where due care is used mistakes can be avoided. The rule seems to be that messages are correctly transmitted.

The legislature of this state, recognizing these facts, in 1883 passed an act in regard to the telegraph companies within the state, the 12th section of which makes the company liable for the non-delivery of dispatches delivered to its care, " and for all mistakes in transmitting messages made by any person in its employ," etc., and declares that it " shall not be exempted from any such liability by reason of any clause, condition, or agreement contained in its printed blanks." This is a reasonable requirement, and as the telegraph company is bound by the law of the state as much so as any inhabitant thereof, the statute in question becomes a part of the contract; that

is, the telegraph company cannot ignore the law and set itself up as superior to it, but must obey it, and transmit messages correctly or be liable for its failure in that respect. This is conceded as to business in the state, but it is claimed that it does not apply to messages transmitted out of the state.

The contract was made at Papillion within this state, and there the defendant undertook to transmit correctly the message to Kansas City. It did not do so. The contract of the defendant therefore was broken, and the plaintiff thereby sustained damages. The place where part of the service was to be performed can make no difference, the contract was made here, and was to be in part performed in this state, and the defendant is liable for the breach thereof.

We are referred to the case of *W. U. T. Co. v. Pendleton*, 7 Sup. Ct. Rept., 1126, as establishing a different rule. In that case the statute of Indiana provided for a penalty of $100 in certain cases of failure of a telegraph company to perform its duty. A message was transmitted from Indiana to a point in Iowa, and the company there failed to deliver the same. The action was brought to recover the penalty, and the United States supreme court held that it could not be enforced; in other words, that the penal laws of a state do not extend beyond its boundaries, and therefore on the failure of the company to perform its duty in Iowa it did not become liable to the penal laws of Indiana.

The above decision, no doubt, is correct, but it can have no application here. In the case at bar the contract entered into by the defendant to transmit the plaintiff's message correctly, and for which it had received its pay, was broken. He has thereby sustained damages. These damages are the natural result of the breach of the contract, and are not penal in their nature. If recovered, they are merely to compensate the plaintiff for the injury sustained by him from the wrongful act of the defendant. Such damages may be recovered.

The precise question here involved was recently before the United States circuit court of this state in *Oppenheimer v. W. U. T. Co.*, and Judge Dundy held that the company was liable, and we so hold.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.