WESTERN UNION TELEGRAPH COMPANY V. ELIAS S. BEALS ET AL.

FILED OCTOBER 20, 1898. No. 10163.

1. **Telegraph Companies:** ERROR IN TRANSMITTING MESSAGES: DAMAGES. A telegraph company is liable for all damages sustained by reason of its failure to correctly transmit and deliver a message received by it, notwithstanding an agreement printed on its blanks to the contrary. (Compiled Statutes, ch. 89a, sec. 12.)

2. ——: ——. A message was delivered to a telegraph company which read: "Attach property of A for seven hundred ninety dollars." The message as delivered read: "Even hundred ninety dollars." *Held,* That the recipient of the message was not guilty of negligence in interpreting the amount $190.

ERROR from the district court of Brown county. Tried below before WESTOVER, J. *Affirmed.*

*W. W. Morsman,* for plaintiff in error.

*Macfarland & Altschuler, contra.*

RAGAN, C.

November 28, 1892, Beals, Torrey & Co., a copartnership doing business in Milwaukee, Wisconsin, by their

attorneys, Winkler and others, delivered to the Western Union Telegraph Company a telegram for transmission and delivery to Alexander Altschuler, also attorney for Beals, Torrey & Co., at Ainsworth, Nebraska. The telegram, together with the printed matter upon the blank upon which it was written, was as follows:

"Send the following message subject to the terms on the back hereof which are hereby agreed to.

"MILWAUKEE, WIS., Nov. 28, '92.

"*To Alexander Altschuler, Ainsworth, Neb.:* Attach property of Sargent & Co. favor of Elias S. Beals, Alexis [Torrey, E. Frank Beals, and James L. Beals, copartners doing business here as Beals, Torrey & Co. Claim for goods sold and delivered seven hundred ninety dollars. Claim not yet due. Ainsworth bank will furnish bond. Statement by mail.

"WINKLER, FLANDERS, SMITH, BOTTUM & VILAS.

"Read the notice and agreement on back."

This notice and agreement was as follows:

"All messages taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery or for non-delivery of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or for non-delivery of any repeated message, beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages, and this company is hereby made the agent of the sender, without liability, to forward any message

over the lines of any other company, when necessary to reach its destination. Correctness in the transmission of. a message to any point on the lines of this company can be insured, by contract in writing, stating agreed amount of risk, and payment of premium thereon, at the. following rates, in addition to the usual charge for repeated messages, viz.: One per cent for any distance not exceeding 1,000 miles, and two per cent for any greater distance. No employé of the company is authorized to vary the foregoing.

"(Signed)             Norvin Green, *President.*
            "Thos. T. Eckert, *Gen. Mgr.*"

The telegram delivered to Altschuler at Ainsworth read: "Attach property, etc., even hundred ninety dollars." In pursuance of the telegram Altschuler caused. the property of Sargent & Co. to be attached in favor of Beals, Torrey & Co. for $190. In the district court of Brown county Beals, Torrey & Co. brought this suit against the telegraph company to recover the remainder of their claim against Sargent & Co. on the ground that the mistake of the telegraph company in transmitting the dispatch caused the loss of said debt. Beals, Torrey & Co. had judgment, to review which the telegraph company has filed here a petition in error.

The first argument of the plaintiff in error is that by the terms of the contract under which the message was transmitted Beals, Torrey & Co.'s right of recovery was limited to the sum paid by them for transmitting the message. In support of this contention counsel has cited us to a long array of cases* which hold that a

*Becker v. Western Union Telegraph Co., 11 Neb. 87; Southern Express· Co. v. Caldwell, 21 Wall. [U. S.] 264; Kiley v. Western Union Telegraph Co., 109 N. Y. 231; Western Union Telegraph Co. v. Carew, 15 Mich. 525; Primrose v. Western Union Telegraph Co., 154 U. S. 1; United States Telegraph Co. v. Gildersleve, 29 Md. 232; Passmore v. Western Union Telegraph Co., 78 Pa. St. 238; Grennell v. Western Union Telegraph Co., 113 Mass. 299; Redpath v. Western Union Telegraph Co., 112 Mass. 71; Clement v. Western Union Telegraph Co., 137 Mass. 463; Hart v. Western Union Telegraph Co., 66 Cal. 579; Wann v. Western Union Telegraph Co., 37 Mo. 472; Pegram v. Western Union Telegraph Co., 97 N. Car. 57; Western Union Telegraph Co. v. Hearne, 77 Tex. 83; Dixon v. Western Union Telegraph Co., 38 N.·

telegraph company has a right to make reasonable rules
and regulations relative to sending messages and
thereby limit its liability for errors not occasioned by
its negligence, and that the contract exempting the com-
pany from liability for damage for mistakes in trans-
mitting an unrepeated message is a reasonable and en-
forceable one.  Among the cases cited is *Becker v. Western
Union Telegraph Co.*, 11 Neb. 87, which sustains the argu-
ment of the plaintiff in error.  This case was decided
at the January, 1881, term of this court.  The legislature
which convened in this state in January, 1883, enacted
what is now chapter 89a of Compiled Statutes, section
12 of which chapter provides: "Any telegraph company
engaged in the transmission of telegraphic dispatches is
hereby declared to be liable for the non-delivery of dis-
patches entrusted to its care, and for all mistakes in
transmitting messages made by any person in its em-
ploy, and for all damages resulting from a failure to
perform any other duty required by law, and any such
telegraph company shall not be exempted from any such
liability by reason of any clause, condition, or agreement
contained in its printed blanks."  After this statute went
into force the question was again presented to this court
whether a telegraph company which had made a mistake
in transmitting a message was protected by the contract
printed on the blank that it should not be liable for mis-
takes or delays in the transmission or delivery or non-

Y. Supp. 1056; *Grace v. Adams*, 100 Mass. 505; *Kemp v. Western Union
Telegraph Co.*, 28 Neb. 661; *Wilcox v. Hunt*, 13 Pet. [U. S.] 378; *Liverpool
& Great Western Steam Co. v. Phenix Ins. Co.*, 129 U. S. 397; *Hibbard v.
Western Union Telegraph Co.*, 33 Wis. 558; *Candee v. Western Union Tele-
graph Co.*, 34 Wis. 471; *Thompson v. Western Union Telegraph Co.*, 64 Wis.
531; *Cutts v. Western Union Telegraph Co.*, 71 Wis. 46; *New York C. R.
Co. v. Lockwood*, 84 U. S. 357; *McFadden v. Missouri P. R. Co.*, 92 Mo. 343;
*Harvey v. Terre Haute & I. R. Co.*, 74 Mo. 538; *Hart v. Pennsylvania R.
Co.*, 112 U. S. 332; *Pacific Express Co. v. Foley*, 46 Kan. 457; *Ballou v.
Earle*, 17 R. I. 441; *Alair v. Northern P. R. Co.*, 53 Minn. 160; *Zouch v.
Chesapeake & O. R. Co.*, 36 W. Va. 524; *Shackt v. Illinois C. R. Co.*, 94
Tenn. 658; *Durgin v. American Express Co.*, 66 N. H. 277; *Duntley v.
Boston & M. R. Co.*, 66 N. H. 263; *New York C. & H. R. R. Co. v. Fraloff*,
100 U. S. 24; *Magnin v. Dinsmore*, 62 N. Y. 35; *Graves v. Lake Shore &
M. S. R. Co.*, 137 Mass. 33; *Richmond & D. R. Co. v. Payne*, 86 Va. 481;
*Douglas Co. v. Minnesota T. R. Co.*, 62 Minn. 288.

delivery of any unrepeated message beyond the amount received for sending same; and it was ruled that the company, by reason of the statute just quoted, was liable for all damages sustained by its failure to correctly transmit and deliver the message received by it, notwithstanding the clause, condition, or agreement on its printed blanks. (*Kemp v. Western Union Telegraph Co.*, 28 Neb. 661.) To the same effect: *Pacific Telegraph Co. v. Underwood*, 37 Neb. 315, and *Western Union Telegraph Co. v. Kemp*, 44 Neb. 194.) We think it clear beyond all controversy that the statute just quoted was enacted by the legislature for the express purpose of obviating the effect of the decision of this court in *Becker v. Western Union Telegraph Co.*, 11 Neb. 87. The cases cited by counsel for the plaintiff in error, because of the provision of our own statute, cannot be regarded as authority by us in support of the telegraph company's contention. Not one of these cases, we think, was influenced by such a statute as the Nebraska statute, nor decided in a jurisdiction in which existed such a statute. It seems to be the contention of counsel for the telegraph company that the contract printed on the telegraphic blank does not attempt and was not intended to exempt the telegraph company from liability for the negligence of itself or its employés. We quote the argument of the eminent counsel in his brief:

"The primary and important question is, is the contract under which the message was transmitted, providing, *inter alia*, that the company 'shall not be liable for mistakes * * * in the transmission * * * of any unrepeated message beyond the amount received for sending the same,' valid? It is the contention of the plaintiff in error that this provision is valid; that it does not violate any principle of the common law; that it is not in conflict with any statute of the state of Wisconsin or of the state of Nebraska; that the object and effect of the contract * * * is not to exempt the company from responsibility for negligence, * * * but to offer

to the public a reasonable and practicable · method of preventing errors and their injurious consequences, to secure a due proportion between charges and risk, and to protect the company against claims which, at the time of entering into the contract, cannot be known or foreseen, and for which, therefore, the company receives no compensation. * * * It may be fully admitted at the outset that this company cannot avail itself of any stipulation, the design of which is to exempt it from the consequences of its own negligence, or that of its servants. The question is not whether the company can stipulate for exemption from liability for the negligence of itself or of its employés. Nor is the question whether it can so stipulate when the negligence is only ordinary as distinguished from gross. The proposition is that the contract does not provide for exemption at all, but provides the means of avoiding errors and due compensation to the company for the service rendered and the risk assumed. If the contract be rightly interpreted, negligence does not enter into the consideration of its validity at all."

As we understand this argument it is that the contract printed on the telegraphic blank exempting the company from liability for a mistake in transmitting an unrepeated message beyond the amount paid for transmitting the same does not conflict with the statute quoted. We think it does. The contract on the blank provides: "It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery or for non-delivery of any unrepeated message." The statute provides that the telegraph company "is hereby declared to be liable for the non-delivery of dispatches entrusted to its care and for all mistakes in transmitting messages made by any person in its employ; * * * and any such telegraph company shall not be exempted from any such liability by reason of any clause, condition, or agreement contained in its printed

blanks." Our conclusion is that by the contract printed on its blanks the telegraph company seeks to exempt itself from liability for damages for mistake or neglect in transmitting or delivering an unrepeated message and that the statute declares all such contracts unenforceable. The statute of Wisconsin—the state in which the contract for the transmission of the message in controversy was made—provides: "Any person, association, or corporation, operating or owning any telegraph lines doing business in this state, shall be liable for all damages occasioned by failure or negligence of their operators, servants, or employés, in receiving, keeping, transmitting, or delivering dispatches or messages." This statute is not materially different from our own. The Wisconsin statute was construed by the supreme court of that state in *Cutts v. Western Union Telegraph Co.*, 71 Wis. 46, 36 N. W. Rep. 627. In that case Lyon, J., speaking for the court, said: "It is claimed by counsel for the plaintiff that the above law renders each telegraph company doing business in this state liable for any and all damages sustained through its negligence in respect to the transmission of messages delivered to it for that purpose, and flowing directly and approximately therefrom, even though the import of the telegram is wholly unknown to the company's agents, as in the case of cipher dispatches not translated to the agent. We shall not attempt an interpretation of this statute any further than to hold that it does render telegraph companies liable for the damages resulting directly from their negligence in the matter of transmitting messages; especially where, as in this case, the agent of the telegraph company is acquainted with the contents and significance of the message." It will thus be seen that both by the law of Wisconsin, where the telegraphic contract in controversy was made, and the law of Nebraska, where the message was delivered, a contract entered into between a telegraph company and its patrons the effect of which is to exempt the company from liability for damages sus-

tained by its patrons by reason of the mistake or neglect of the telegraph company to correctly transmit and deliver an unrepeated message is illegal and unenforceable.

A second argument is that Altschuler's negligence contributed to the injury sued for. As already stated, Altschuler interpreted the message received by him "$190," and caused an attachment to be issued in favor of his client for that sum. But the message as delivered to Altschuler was not unintelligible. It was not couched in extraordinary or unusual language. Altschuler would certainly have been guilty of negligence had he interpreted the message received by him to read seven hundred ninety dollars. The expression "even hundred ninety dollars" was not different in meaning from what it would have been had it read "$190 even," and the interpretation placed on the message by Altschuler was a reasonable one. We do not think that the language of the message was of such a character as to give Altschuler reasonable cause for suspecting that a mistake had been made in its transmission. The foregoing are the only contentions which we deem it necessary to notice. There is no error in the record and the judgment of the district court is

AFFIRMED.